**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOMINIQUE CAVALIER, NINA HARRIS, and GERALD HARRIS, individually and on behalf of those similarly situated,<br><br>*Plaintiffs,*<br>v.<br><br>DEEPINTENT TECHNOLOGIES, INC.,<br><br>*Defendant.* | Civil Action No. 1:25-cv-08949 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

**BLANK ROME LLP**
Michael D. Silberfarb: MS-9678
1271 Avenue of the Americas
New York, NY 10020
Phone: 212-885-5356
Michael.Silberfarb@BlankRome.com

*Counsel for Defendant*

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. Plaintiffs' CIPA Claims Should Be Dismissed. ..... 7

1. Plaintiffs' Claim Under The First Clause Of CIPA Should Be Dismissed. ..... 8

2. Plaintiffs' Claim Under the Second Clause of CIPA § 631(a) Should Be Dismissed. ..... 9

a. Plaintiffs Have Not Alleged That DeepIntent Intercepted Contents. ..... 9

b. Plaintiffs Do Not Have Standing To Bring Their Claims Under The Second Clause Of CIPA Section 231. ..... 12

c. Plaintiffs Have Not Plausibly Alleged That DeepIntent Intentionally Intercepted "Contents" Of Communications. ..... 13

d. Plaintiffs' Conclusory Allegations are Insufficient to Establish that Content Was Intercepted 'In Transit,' As Required by CIPA § 631(a)'s Second Clause. ..... 14

3. Plaintiffs Cannot Establish That DeepIntent Installed Pen Registers Under CIPA. ..... 16

B. Plaintiffs' Claims Under ECPA Should Be Dismissed Because the Websites Consented to DeepIntent's Use of Trackers. ..... 20

C. Plaintiffs' Claims For Intrusion Upon Seclusion And Invasion Of Privacy Must Be Dismissed. ..... 23

D. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ..... 26

E. Plaintiffs' Declaratory Judgment Claim Should Be Dismissed. ..... 26

V. CONCLUSION ..... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)............................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................ 6

*Beltran v. Doctors Medical Center of Modesto*, 2025 WL 1635467
(E.D. Cal. June 9, 2025)........................................................................................... 11, 25

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020)..................................... 9, 22, 23, 26

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023).............................................. 24

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010).................................................................. 20

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)............ 17

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ................................................ 7, 8

*Cooper v. Slice Technologies, Inc.*, 2018 WL 2727888 (S.D.N.Y. June 6, 2018) ...................... 22

*Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024)……...12

*De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845 (2018)........................................... 25

*Doe v. Eating Recovery Center, LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)........ 2, 15, 16

*Gabrielli v. Insider, Inc.*, 2025 WL 2161288 (S.D.N.Y. Feb. 18, 2025)............................... 19, 20

*Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022)........................................................................ 16

*Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023).......................... 26

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................ 9

*Gutierrez v. Converse Inc.*, 2025 WL 1895315 (9th Cir. July 9, 2025) ...................................... 8

*Harrill v. Emanuel Medical Center*, 2025 WL 1635428 (E.D. Cal. 2025) ........................... 10, 11

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020)...................................... 20, 23

*Heiting v. FKA Distrib. Co.*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ............................ 12, 13

*Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir. 1994) ........................................................................ 6

*Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011)............................................................... 26

*Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1 (1994) ......................................................... 23

*Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424 (S.D.N.Y. 2015)................................ 19

*In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................... 21

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020)........................ 23

*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................. 8

*In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272 (C.D. Cal. 2001)............................................. 21

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................................... 9

*In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873 (D.N.J. July 2, 2014)................... 10

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ............................................................... 9

*Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940 (S.D. Cal. 2024)............................. 10, 11

*Jones v. Tonal Sys. Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) ................................................ 14

*Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................ 21

*King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419 (E.D. Cal. June 9, 2025)............ 11

*Lewis v. Magnite, Inc.*, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)............................. 11, 15, 16

*Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072 (C.D. Cal. 2023) ...................... 14

*Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Sup. Ct. Mar. 13, 2024) ................. 18, 20

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................................................... 23

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021).................................................. 14

*Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024)................................... 10

*Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)...................... 12

*Moss v. ResortPass, Inc.*, 2025 WL 3452360 (Cal. Super. Oct. 30, 2025).................................. 15

*Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) .................................... 14, 22, 23

*People v. Buchanan*, 26 Cal. App. 3d 274 (1972) ........................................................................ 13

*Performing Arts Ctr. v. Actor's Equity Ass'n*, 2022 WL 16755284
(E.D.N.Y. Aug. 25, 2022) .............................................................................................................. 26

*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........................................... 7

*Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ..................................... 17

*Steinmeyer v. Am. Ass'n of Blood Banks*, 715 F. Supp. 3d 1302 (S.D. Cal. 2024) ........................ 12

*Sussman v. ABC*, 186 F.3d 1200 (9th Cir. 1999) ................................................................... 21, 22

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................... 8

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ............................ 23

*Torres v. Prudential Financial, Inc.*, 2025 WL 1135088
(N.D. Cal. Apr. 17, 2025) ...................................................................................................... 15, 16

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................................... 12, 19

*U.S. v. DiFelice*, 837 F. Supp. 81 (S.D.N.Y. 1993) ...................................................................... 22

*U.S. v. Forrester*, 512 F.3d 510 (9th Cir. 2024) ........................................................................... 20

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ............... 8, 14

*VW Credit Leasing LTD v. Runway Towing Corp.*, 757 F. Supp. 3d 271 (E.D.N.Y. 2024) ........ 26

*Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989 (N.D. Cal. 2024) .......................................... 15

*Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................... 8

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................... 9

*Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ............................... 10

**Statutes**

18 U.S.C. §§ 2510, *et seq* ................................................................................... 3, 4, 20, 22, 26
28 U.S.C. § 2201 ............................................................................................................................ 26
Cal. Penal Code §§ 630, *et seq.* ........................................................... 2, 3, 7, 8, 9, 16, 17, 18

Defendant DeepIntent Technologies, Inc. ("DeepIntent"), by and through its undersigned counsel, files this Memorandum of Law in support of its Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction (standing) pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I. PRELIMINARY STATEMENT

This case revolves around allegations that DeepIntent used commonly-employed digital advertising technology to "track" certain information about Plaintiffs' voluntary activity on public websites, so it could assist its customers to anonymously place digital advertisements. It is hard to imagine in this day and age that anyone could claim to be surprised that advertising companies use data from visits to public websites to place targeted ads, but that is at the heart of what Plaintiffs are claiming.

The Complaint tries to frame this as a privacy case. It is not. While Plaintiffs speculate about what DeepIntent ***could hypothetically*** have done, they do not allege any actual privacy violation because there has not been one. There is no allegation that DeepIntent knows—or has ever known—the identity of Plaintiffs or any other proposed class member. There is no allegation that DeepIntent knows – or has ever known – any of Plaintiffs' personally identifiable information. And, there is no allegation that there has been a violation of HIPAA or any other statute designated to protect the privacy of medical information.

There could be no such allegations. DeepIntent employs among the most robust privacy policies and procedures in the industry. It has spent substantial resources developing and deploying specialized technology to prevent against the theoretical harm over which Plaintiffs feign concern. Contrary to Plaintiffs' suggestion, DeepIntent has never sold or provided access to medical data. Nor has it ever re-identified a patient or allowed its customers to do so. If it had, this case would be pending in the enforcement division of the Department of Health and Human Services, not the

Southern District of New York.

The Complaint grossly mischaracterizes DeepIntent's business model to try to bring a claim under the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"). CIPA is a criminal wiretapping statute that was enacted in the 1960s. It was not drafted or intended to apply to internet technologies. Yet, approximately three years ago, a California court allowed a case applying CIPA to digital advertising technology to proceed past the pleading stage. This opened the flood gates. Plaintiffs' lawyers, relying on CIPA's vague language and the perceived complexity of internet technologies, began filing new cases on a daily basis. This has resulted in a deluge of confusing and inconsistent rulings. As one court recently observed:

> ***The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute…The state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will be subject to liability.***
>
> ***
>
> ***As difficult as it is to apply CIPA to the physical world, it's virtually impossible to apply it to the online world. Hopefully, the Legislature will go back to the drawing board on CIPA. Indeed, it would probably be best to erase the board entirely and start writing something new. But until that happens, courts should not contort themselves to fit the type of conduct alleged in this case into the language of a 1967 criminal statute about wiretapping***.

*Doe v. Eating Recovery Center, LLC*, 2025 WL 2971090, at *7 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.) (emphasis added). Judge Chhabria's warning is prescient here. Plaintiffs go out of their way to stretch the truth and describe basic technology in the most confusing way possible, in order to suggest that DeepIntent's conduct violates CIPA. But, even assuming that every one of Plaintiffs' allegations are true as is required in a Motion to Dismiss, this case should be dismissed for the following reasons.

***First***, Plaintiffs' claims under the first clause of Section 631 of CIPA (Count I) should be dismissed because that Section expressly applies only to the wiretapping of telephones or telegraphs. Allegations about "wiretapping" of internet communications are not contemplated by this clause.

***Second***, Plaintiffs' claims under the second clause of Section 631 of CIPA (Count I) should be dismissed because Plaintiffs have not sufficiently pled any of the elements necessary to establish that claim. They do not plead that DeepIntent intercepted any "contents" of a communication in transit, and even if their conclusory and vague allegations could be interpreted broadly to allege an interception of contents, they do not claim that DeepIntent "read" or "attempted to read" such contents or that DeepIntent did so with the requisite scienter. Moreover, Plaintiffs do not have standing to bring a claim under the second clause because they have not alleged that they have suffered any concrete injury.

***Third***, Plaintiffs' claim that DeepIntent installed a "pen register" under CIPA Section 638.51 (Count I) should be dismissed because "pen registers" are devices that track telephone technologies, not IP addresses on the internet (which is what Plaintiffs claim that DeepIntent did). Plaintiffs also lack standing to bring the claim because they chose to make their IP addresses available when they voluntarily chose to access public websites available on the internet – and therefore suffered no harm from DeepIntent's alleged monitoring of such IP addresses. And even if Plaintiffs' pen register claim was otherwise cognizable under CIPA, a claim could not be brought here because Section 638.51 requires a showing that Plaintiffs did not consent to the use of their IP addresses. Plaintiffs, however, admit that they voluntarily made their IP addresses available by visiting public websites. This constitutes consent under applicable law.

***Fourth***, Plaintiffs' claim under the Federal Wiretapping Act, 18 U.S.C. §§ 2510, *et seq.*,

as amended by the Electronic Communications Privacy Act of 1986 ("ECPA") (Count II), should be dismissed because ECPA is a single-party consent statute, and Plaintiffs admit that the websites with which they communicated consented to the use of, and installed, DeepIntent's technology. Because no applicable exception applies, the websites' consent to the use of DeepIntent's technology is fatal to Plaintiffs' ECPA claim. Moreover, Courts have repeatedly found that ECPA is subject to the same elements and substantive standard as claims brought under Section 631, clause 2 of CIPA. Because Plaintiffs' clause 2 claim should be dismissed, so should their ECPA claims.

***Fifth***, Plaintiffs' intrusion upon seclusion and invasion of privacy claims under California law (Counts III and IV) should be dismissed because Plaintiffs' conclusory and vague allegations that DeepIntent tracked activity on public websites that Plaintiffs voluntarily visited to learn about "medical conditions" are insufficient as a matter of law to demonstrate that Plaintiffs had a reasonable expectation of privacy, or that DeepIntent's conduct was offensive.

***Sixth,*** Plaintiffs' unjust enrichment claim (Count V) should be dismissed because it is not a separate cause of action under California law and is impermissibly duplicative of Plaintiffs' other claims. Likewise Plaintiffs' declaratory judgment claim should be dismissed because it depends entirely on Plaintiffs' other claims, which should also be dismissed.

For these reasons, and the additional reasons set forth below, DeepIntent respectfully requests that the Court dismiss the Complaint in its entirety.

## II. FACTUAL BACKGROUND

DeepIntent assumes the factual allegations in the Complaint to be true solely for purposes of this Motion. In describing the factual allegations in the Complaint, DeepIntent does not admit that any of the allegations are accurate or true.

DeepIntent assists its customers by placing targeted advertisements on health- and non-health-related websites. Compl. ¶2. According to the Complaint, DeepIntent deploys basic internet software and technology, often called ”pixels” “cookies” and “beacons,” to track certain internet activity (like when an ad was seen by a user), so that it can optimize who receives the advertisements. Compl. ¶¶45-61. The technology used by DeepIntent is commonly used in the digital advertising industry. Compl. ¶¶16-36. Based on (erroneous) assumptions about how the digital advertising industry and DeepIntent's business work, the Complaint alleges that DeepIntent could have had “intercepted” private information about individuals' medical conditions. Compl. ¶¶87-93.

Plaintiffs are three California residents who claim that certain of their internet activities were “tracked” by DeepIntent. Compl. ¶¶7-9; 70-87. In support of these allegations, the Complaint alleges that Plaintiffs “visited” certain healthcare-related public websites through which DeepIntent deploys its technology to learn about “medical conditions.” Compl. ¶¶70-87. The Complaint asserts that DeepIntent's technology allowed it to track certain information (such as IP addresses, search activity and “clicks”), but it does not allege that Plaintiffs actually made searches or clicks on the websites they visited. *Id*. Nor does the Complaint allege that Plaintiffs engaged in any other activity on the websites at issue. *Id*. The Complaint also does not state why Plaintiffs were seeking to learn about any medical conditions, or whether Plaintiffs had the medical conditions that they were seeking to learn about. *Id*.

The Complaint does not allege that Plaintiffs were specifically identified by DeepIntent or that DeepIntent or any of its customers knew Plaintiffs' identity. Nor does it claim that any personal identifying information about Plaintiffs was learned by DeepIntent or any of its customers. Instead, it hypothesizes that, if certain conditions are present, the type of technology utilized by DeepIntent "can result" in the "re-identification" of individuals. Compl. ¶¶90-93.

The Complaint alleges that Plaintiffs did not consent to *DeepIntent's* utilization of the commonly employed digital internet technology; however, it does not deny that Plaintiffs consented to the use of the technology more generally. Compl. ¶¶94-100.

Plaintiffs bring six causes of action against DeepIntent: violation of CIPA through wiretapping and use of a pen register (Count I); violation of ECPA (Count II); invasion of privacy under the California Constitution (Count III); intrusion upon seclusion under California common law (Count IV); unjust enrichment (Count V); and Declaratory Judgment (Count VI).[1]

For the reasons identified below, each of these claims should be dismissed.

## III. LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to withstand a motion to dismiss pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).

[1] Plaintiffs' sixth cause of action is erroneously labelled as Count VII rather than Count VI. For the sake of clarity, DeepIntent will refer to it as Count VI.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Plaintiffs' CIPA Claims Should Be Dismissed.

Plaintiffs advance claims under Sections 631 and 638.51 of CIPA. Section 631 is divided into four "clauses," two of which are implicated here. Specifically, the first two clauses provide that "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner:

> [Clause 1] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or
>
> [Clause 2] in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state..."

CIPA § 631(a). While Plaintiffs conflate the two clauses and read them as a single cause of action, courts routinely and correctly read them as independent causes of action, which are evaluated separately. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1115-16 (S.D. Cal. 2024); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (noting that, "in recognizing the distinction between the language of clause one and two, courts have applied the second clause to internet communications," but not the first clause).

Section 638.51(a) prohibits the installation of a pen register, which is defined as a device that "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which wire or electronic communication is transmitted, but not the contents of a communication." CIPA §§ 638.50(b); 638.51(a).

As explained below, Plaintiffs cannot establish the elements of their claims under Sections 631 or 638.51(a).

1. **Plaintiffs' Claim Under The First Clause Of CIPA Should Be Dismissed.**

The first clause of CIPA § 631(a) prohibits the intentional tapping or unauthorized connection, "by means of any machine, instrument, or contrivance," "with any telegraph or telephone wire, line, cable, or instrument." CIPA § 631(a). Courts interpreting the "plain text of the statute," have repeatedly held that this clause "protects only communications that are made over a wire, line, or cable." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (internal citation omitted); *see also Swarts v. Home Depot, Inc.,* 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) ("Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet"); *Cody,* 718 F. Supp. at 998 ("The plain terms of Section 631(a)'s first clause prohibit intentionally eavesdropping with any telegraph or telephone wire or with an instrument of any internal telephone communication system"); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023) ("Section 631(a)'s plain text does not prohibit the non-telephonic conduct described here"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *Gutierrez v. Converse Inc.,* 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) ("If the California legislature wanted to apply § 631(a) to the internet, it could do so by amending that provision or adding to CIPA's statutory scheme," but "California has failed to update § 631(a) to account for advances in technology since 1967. It is not our job to do it for them.") (Bybee, J., concurring).

Here, Plaintiffs do not allege any conduct over telephone or telegraph. Accordingly, Plaintiffs' claim brought under the first Clause of CIPA Section 631(a) must be dismissed.

**2. <u>Plaintiffs' Claim Under The Second Clause of CIPA § 631(a) Should Be Dismissed</u>.**

The second clause of CIPA Section 631(a) prohibits the unauthorized reading, attempted reading, or learning of "the contents or meaning of any message, report, or communication while the same is in transit." CIPA § 631(a). Plaintiffs have not alleged facts sufficient to sustain a claim under this provision for the following reasons.

**a. <u>Plaintiffs Have Not Alleged That DeepIntent Intercepted Contents</u>.**

To state a claim under clause 2 of Section 631(a), a plaintiff must allege that the defendant "read or intended to read" the "contents" of the plaintiff's communication. In this context, "content" "refers to the intended message conveyed by the communication, and it does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing complaint to extent it alleged interception of "record information," which is not content); s*ee also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that "content" "is limited to information the user intended to communicate, such as the words spoken in a phone call," rather than "data automatically generated about a telephone call").

Here, in support of their claim, Plaintiffs allege that DeepIntent collected information, including user "device types, browsers, IP addresses, and other technical identifiers associated with those Plaintiffs[,]" as well as the URLs, i.e., the actual addresses of the websites Plaintiffs visited. Compl. ¶¶77, 81, 85. This information is universally considered "record information" – not content. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (text messages are content, but "user names, passwords, and geographic location information are not"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (finding that the plaintiff's

"keystrokes, mouse clicks, pages viewed, and shipping and billing information . . . [and] the date and time of the visit, the duration of the visit, her location at the time of the visit, her browser type, and the operating system on her device" did not constitute message content and so could not state a claim); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947-48 (S.D. Cal. 2024) (granting motion to dismiss where allegedly intercepted information – "IP address, device used to connect to website, web browser used, date and time of communication, words used to prompt the chat to direct her to the appropriate Peloton advisor or 'bot playbook'" – were record information); *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *5-6 (N.D. Cal. Dec. 30, 2024) (finding that "a user's email, first name, last name, gender, phone number, city, state, and zip code from form fields, as well as a visitor's [Facebook ID]" are record information); *id.* at *6 (noting that "generally the alleged button clicks and pages viewed are record information since they are akin to user habits"); *Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (finding that website interactions such as "button clicks . . . touches (for mobile browsers), key presses, [and] page navigation" are record content); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (finding that IP addresses and URLs, by themselves, are not content). As such, DeepIntent's alleged interception cannot constitute a basis for a claim under the second clause of CIPA.

Perhaps recognizing this deficiency, Plaintiffs allege that because the URLs collected by DeepIntent include the text of "searches and queries," the URLs constitute "contents" for purposes of CIPA. Compl. ¶¶73, 117. While some courts have found that URLs containing search terms can be considered "contents" for purposes of CIPA, Plaintiffs would need to "specify or describe the searches [they] conducted on the Website" to sufficiently plea that such searches are "contents." *Harrill v. Emanuel Medical Center*, 2025 WL 1635428, at *4 (E.D. Cal. 2025) (dismissing CIPA

claim for failure to specify which searches were made); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Ca. Dec. 4, 2025) ("As a matter of due process, these allegations do not provide adequate notice as to what Defendant did to harm these Plaintiffs. Without allegations as to what these Plaintiffs searched, Plaintiffs fail to plausibly allege that Defendant intercepted the contents of their communications.")

Here, Plaintiffs allege only that they "visited" various websites "to obtain information about personal health conditions" and that DeepIntent intercepted "every interaction between them, on the one hand, and the website, on the other hand, including URLs, the text of searches…" Compl. ¶¶54-55, 77, 81, 85, 117. Crucially, Plaintiffs do not allege that they actually made any searches on the websites at issue, nor do they provide any information that describes any alleged searches that they conducted.[2] This is fatal to Plaintiffs' claim under the second clause of Section 631(a). *See, e.g., Harrill*, 2025 WL 1635428 at *4; *Lewis*, 2025 WL 3687546, at *12 (C.D. Ca. Dec. 4, 2025) (dismissing CIPA claim where Plaintiff only alleged "illustrative examples" of how search terms contained URLs and claimed without specificity that it had made searches on the website at issue); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing CIPA complaint because plaintiff did not allege that it made searches); *Beltran v. Doctors Medical Center of Modesto*, 2025 WL 1635467, at *7-8 (E.D. Cal. June 9, 2025) (same); *Peloton Interactive*, 720 F. Supp. 3d at 947 (finding it insufficient under CIPA to allege that defendant captures and uses the full transcript of a conversation without "identify[ing] enough facts about the content of the allegedly intercepted conversations to enable Defendants to defend itself effectively").

[2] The only example of DeepIntent's alleged recording of an actual search involved a search by a non-party. Compl. ¶¶ 54-55.

**b. Plaintiffs Do Not Have Standing To Bring Their Claims Under The Second Clause Of CIPA Section 631(a).**

For similar reasons, Plaintiffs' claims under the second clause of CIPA 631(a) must be dismissed for lack of standing. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis added). A "[p]laintiff cannot establish constitutional standing based on conclusory statements." *Steinmeyer v. Am. Ass'n of Blood Banks*, 715 F. Supp. 3d 1302, 1318 (S.D. Cal. 2024). Courts have repeatedly dismissed claims under the second clause of Section 631(a) where the plaintiffs only allege generalized conduct about a defendant's interception of data without specific allegations regarding their own interactions with the websites. *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (Plaintiff fails to allege an injury in fact if he relies only on "general allegations about how [Defendant] intercepts website visitors' communications and monitors their actions" while "allegations about [Plaintiff's] own interactions with [the website] are sparse."); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *3 (N.D. Cal. Aug. 6, 2025) (dismissing clause 2 claim on standing grounds where plaintiff alleged that it visited websites but did not provide any details about her own interactions with the website); *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (dismissing CIPA claim for lack of standing because "[Plaintiff] fails to allege any basic facts from which the Court could infer a concrete injury, like when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized.")

Similarly, here, Plaintiffs allegations about their interactions with the websites at issue are incredibly sparse. They allege merely that they visited certain websites to learn about medical

conditions. They do not allege when or how many times they visited the websites, what information was provided, what information DeepIntent allegedly captured or whether Plaintiffs were aware that the websites were capturing such information. *See id*.[3] Under these circumstances, they have not sufficiently alleged injury in fact, and the Complaint should be dismissed for lack of standing. *See id*.

**c. <u>Plaintiffs Have Not Plausibly Alleged That DeepIntent Intentionally Intercepted "Contents" Of Communications.</u>**

Moreover, to satisfy a claim under the second clause of CIPA Section 631, a plaintiff must also allege that the defendant consciously intended to learn the "contents" of a communication (non-record information). *See People v. Buchanan*, 26 Cal. App. 3d 274, 287-88 (1972) (finding § 631's scienter requirement not satisfied where switchboard operators overheard a telephone conversation "inadvertent[ly]"). As detailed above, the only "contents" that DeepIntent arguably intercepted were search terms contained in URLs. But even if Plaintiffs had sufficiently alleged that the URLs contained contents, which they have not, the Complaint does not allege that DeepIntent intentionally intercepted such contents. To the contrary, the Complaint uses passive voice to make clear that the search terms were obtained "as a result" of the way the websites structure their URLs to include search terms, not because DeepIntent intended to intercept anyone's health information. Thus, Plaintiffs have not satisfied the scienter requirement under the second clause of Section 631. The claim should be dismissed for this reason.

---

[3] Plaintiffs allege that they did not know that "DeepIntent" captured information but they do not allege that they were unaware that information was being captured more generally. Compl. ¶¶ 94-100.

**d. Plaintiffs' Conclusory Allegations are Insufficient to Establish that Content Was Intercepted 'In Transit,' As Required by CIPA § 631(a)'s Second Clause.**

Independently, Plaintiffs cannot state a claim under the second clause of Section 631(a) because they have not alleged that the contents of any conversations were intercepted "in transit." To be liable under the second clause, "a defendant must have 'read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received,'" *Jones v. Tonal Sys. Inc.*, 751 F. Supp. 3d 1025, 1036 (S.D. Cal. 2024) (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021)). Thus, to state a claim, the plaintiff must allege facts that plausibly support that the content was acquired "in transit" such that they were actually "intercepted.'" *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120-21 (S.D. Cal. 2023) (citing *Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp.3d 1072, 1085 (C.D. Cal. 2023) ("Bare allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit")); *see also Valenzuela*, 674 F. Supp. 3d at 758 (dismissing complaint because plaintiffs failed to allege how the defendant had intercepted the communication in real time).

Here, Plaintiffs assert that the allegations that contents were intercepted "in transit" are set forth in paragraphs 45-61 of the Complaint. Compl. ¶117. These paragraphs put forth a highly technical (and inaccurate) description of how DeepIntent's business and technology purportedly work. But nowhere in those paragraphs (or anywhere else) do Plaintiffs allege that DeepIntent intercepted any contents when they were "in transit." For this reason, the clause 2 claim must be dismissed. *See Tonal Sys.*, 751 F. Supp. at 1036; *Pena*, 670 F. Supp. 3d at 1120-21; *Valenzuela*, 674 F. Supp. 3d at 758.

And even if that were not the case, a mere allegation that the contents of a communication were intercepted in transit is insufficient by itself to sustain a claim under Section 631(a)'s second

clause. Rather, because the second clause of Section 631(a) requires a finding that the defendant "read or attempted to read" the contents in transit, to state a viable claim, a plaintiff must plead that there was "some effort at understanding the substantive meaning of the communication" at the time of the interception. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025) (quoting *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024)); *see also Lewis*, 2025 WL 3687546, at *12 ("This Court agrees with others that 'you have to do something more than just intercept the contents of the communication' to state a claim.") (internal citations omitted); *Moss v. ResortPass, Inc*., 2025 WL 3452360, at *1 (Cal. Super. Oct. 30, 2025) (dismissing clause 2 claim with prejudice and fully adopting the reasoning in *Doe v. Eating Recovery Ctr*); *see also Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021). Mechanically-deployed data categorization that lacks any "intelligible understanding of" the underlying data does not constitute "reading" in the context of the second clause. *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025); *see also Doe*, 2025 WL 2971090, at *5 ("A filtering process that simply sorts out certain data—which may be better analogized to sorting mail than to reading it—can't fairly be characterized as an effort at understanding the meaning of the communication."); *Lewis*, 2025 WL 3687546, at *12 (dismissing complaint because allegations of collecting information or tracking plaintiffs through websites and apps are insufficient to sustain a claim under clause 2 under CIPA).

The allegations in the Complaint do not come close to meeting this standard. Plaintiffs do not allege that DeepIntent read or attempted to read the contents of any communications in transit. At most, Plaintiffs describe automated processes used to store and or filter information. *See* Compl. ¶49 (DeepIntent "automatically checks to determine if [a] user has a CDIUSER identifier stored in their browser,"); *id*. ("recognize[s] the user as one who has previously been to the website"); *id*.

("generate[s] a new CDIUSER identifier for the user"); and *id*. ¶61 ("aggregates intercepted user data across multiple sites and sessions to build a comprehensive behavior profile on the user"). Even if these allegations were true, and they are at best misleading, the mere processing and aggregating of data cannot be the basis for a claim under the second clause of Section 631(a). *See Doe*, 2025 WL 2971090, at *5; *Lewis*, 2025 WL 3687546, at *12; *Torres*, 2025 WL 1135088, at *7. For this reason, too, Plaintiffs claim under the second clause of Section 631(a) should be dismissed.

### 3. <u>Plaintiffs Cannot Establish That DeepIntent Installed Pen Registers Under CIPA.</u>

In order to state a pen register claim under CIPA, Plaintiffs must allege that DeepIntent installed an actual pen register. A pen register "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." CIPA § 638.50(b). Plaintiffs have not alleged a pen register claim for at least three reasons.

First, DeepIntent's purported "tracking tools" are not pen registers because as Plaintiffs admit, they are software that is utilized on the internet. Compl. ¶4. Section 638.51 was never meant to apply to internet software. Indeed, even though the section was enacted in 2015, when the California legislature would have been well-aware of the internet, there is not a single reference to the "internet" or "software" in the legislative history of Section 638.50 or its corollary Section 638.51. *See* compiled legislative history for Assembly Bill No. 929, adding Sections 638.50, 638.51, 638.52, and 638.53 to the California Penal Code, attached as **Exhibits A-G** to the January 12, 2026 Declaration of Michael D. Silberfarb ("Silberfarb Declaration"). Rather, the legislative history is replete with references to "telephones" (numbers, lines, and calls). *See, e.g.,* Author's Statement on Assembly Bill No. 929, attached as **Exhibit B**, pp. 1-2, to the Silberfarb Declaration.

("One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a ***particular telephone line*** . . . and cannot be used to obtain real-time location data on a cellular telephone) (emphasis added). Further, when Section 638.51 was enacted, the California legislature contemporaneously enacted another provision that court orders authorizing the use of a pen register must include information associated with "***the telephone line*** to which the … device is to be attached." CIPA § 638.52(d)(1), (3) (emphasis added). Thus, there is no indication the legislature intended to expand the definition of a pen register to allow private litigants to bring a suit based on internet communications (which inherently do not rely on a telephone line). As one Court recently held:

> Here, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites. Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing.
>
> ***Thus, the legislative history of the CIPA suggests that "pen register" … refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.***

*Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (emphasis added) (dismissing claim under 638.51 claim ***with prejudice***); *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Ct. Sept. 9, 2024) ("The legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users"); *Rodriguez v. Ink America Int'l Grp. LLP*, No. 25STCV15350, at pp. 3-6 (Cal. Super. Dec. 10, 2025) (after an in depth analysis of CIPA's legislative history and plain language, dismissing pen register claim ***with prejudice*** because "CIPA's structure and history indicate that its pen-register provisions were

aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software. As such, the statute cannot reasonably be read as broadly as Plaintiff attempts to read it.") (attached as **Exhibit H** to the Silberfarb Declaration).

Moreover, there is no policy reason to extend the pen register provisions under Section 638.51 to the circumstances detailed in the Complaint. Plaintiffs allege that DeepIntent's software constitute "pen registers" because they are "devices" or "processes" that "record" "addressing or signaling information"—***such as Plaintiffs' and California Subclass Members' IP addresses***—from the electronic communications transmitted by users' internet-connected devices." Compl. ¶127 (emphasis added). While Plaintiffs allege (falsely) that they were injured because DeepIntent obtained and used contents of communications (i.e., web searches), the obtaining and using of such "contents" cannot be the basis of a pen register claim because Section 638.50(b) specifically defines a pen register to be "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents of a communication***." CIPA § 638.50(b) (emphasis added). Thus, the entirety of Plaintiffs' pen register claim depends on the alleged collection and tracking of IP addresses.

IP addresses are the lifeblood of the internet; every time an individual visits a website, she voluntarily provides an IP address and the IP address is then used by the website to communicate with the individual and other websites. *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Ct. Mar. 13, 2024). For this reason, "[p]ublic policy strongly disputes [the] potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff…as a violator." *Id*. (dismissing pen register claim under 638.51 based on the tracking of IP addresses). The plain language and legislative history of Section 638.51 (and concepts of public

policy) make clear that it was never meant to apply to circumstances that involved the internet or the collection of IP addresses. The Court should decline to interpret the provision beyond its intended scope.

Second, Plaintiffs do not have standing to bring a pen register claim under Section 638.50. Article III of the Constitution only confers federal courts with power to resolve "Cases" and "Controversies." *Gabrielli v. Insider, Inc.*, 2025 WL 2161288, at *3 (S.D.N.Y. Feb. 18, 2025) (citing *TransUnion*, 594 U.S. at 423). Among other things, Article III standing requires that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427. Procedural violations alone typically do not satisfy the concrete harm requirement. *Id*. at 426. *Ross v. AXA Equitable Life Ins. Co*., 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015) (A state legislature cannot "confer Article III standing upon a plaintiff who suffers no concrete harm merely by authorizing a private right of action based on a bare violation of a state statute.")

Recently, in *Gabrielli*, Judge Ramos addressed whether a plaintiff had standing to bring a pen register claim under Section 638.51. In that case, the plaintiff alleged that the defendant had "installed a third-party tracker…on his browser," which allowed the defendant to obtain plaintiff's IP address. *Gabrielli*, 2025 WL 2161288, at *1. The plaintiff further alleged, as here, that the IP addresses were used to obtain "geographic information" which was then used "to target customers in specific geographic areas for more effective advertising and marketing." *Id*.

The *Gabrielli* court held that software used to collect IP addresses (which is what Plaintiffs allege here) cannot constitute a cognizable harm for several reasons. Initially, the Court held that any violation of 638.51 was a procedural harm as opposed to a substantive one. The Court pointed out that unlike Section 631 of CIPA (which barred wiretapping under any circumstances), Section

638.51 only bans the placement of a pen register "without first obtaining a court order." *See Gabrielli*, 2025 WL 2161288, at *8. Thus, a violation of Section 638.51 is procedural and does not automatically confer standing. *Id*.

Plaintiffs likely will assert, as the plaintiff did in *Gabrielli*, that they still have suffered a concrete injury because DeepIntent's placement of the alleged pen register constitutes an intrusion on their privacy. However, as noted above, unlike Plaintiffs' other claims, their pen register claim is based solely on the obtaining and use of IP addresses. Courts have repeatedly held that "a [person] has no reasonable expectation of privacy in IP addresses." *Id*. at *4 (collecting cases); *see also Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone"). For this reason, any argument that Plaintiffs suffered concrete harm to their privacy expectations by virtue of Defendants monitoring and tracking IP addresses must be rejected. *See Gabrielli*, 2025 WL 2161288, at *4.

Third, by engaging in activity on the internet, Plaintiffs openly made their record information, including their IP addresses available. By doing so, Plaintiffs voluntarily consented to the use of their IP address and, therefore, cannot sustain a CIPA pen register claim. *Licea*, 2024 WL 1698147, at *4 (dismissing pen register claim because of Plaintiffs visiting of the website constituted "consent" to utilize its IP address) (*citing Heeger* 509 F. Supp. 3d at 1190 and *U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)).

### B. Plaintiffs' Claims Under ECPA Should Be Dismissed Because the Websites Consented to DeepIntent's Use of Trackers.

Plaintiffs' claim under ECPA should be dismissed for several reasons. First, under ECPA, there is no unlawful interception where one of the parties to the communication has given prior consent to the alleged interception ***unless*** the plaintiff can establish tortious or criminal intent. 18 U.S.C. § 2511(2)(d). *See Caro v. Weintraub*, 618 F.3d 94, 100-101 (2d Cir. 2010) (dismissing

claim because plaintiff failed to plead that the defendant "intend[ed] to commit a crime or tort independent of the act of recording itself"); *In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272, 1278-79 (C.D. Cal. 2001) (dismissing claim where plaintiff failed to sufficiently allege a criminal or tortious purpose).

Here, Plaintiffs specifically admit that the websites with which they communicated consented to the alleged interceptions. *See* Compl. ¶ 45 (noting that DeepIntent's tracking technologies "are integrated into health-related websites that have agreed to host such technologies"). Thus, absent the application of the crime/tort exception, ECPA claim must be dismissed in its entirety because it falls under ECPA's statutory consent exception. *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (Buchwald, J.) ("[C]ourts may dismiss a claim based on a statutory exception that appears on the face of the complaint," including ECPA's statutory consent exception); *see also Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (finding that the websites' choice to deploy Defendant's tools constitutes prior consent to interception because ECPA is a one-party consent statute).

Plaintiffs cannot satisfy the exception. As Judge Buchwald held in *DoubleClick*:

> the legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed ***narrowly***, covering only acts ***accompanied*** by a specific contemporary intention to commit a crime or tort.

*DoubleClick*, 154 F. Supp. 2d at 515 (describing legislative history and case law) (emphasis added). Courts "have consistently ruled that a plaintiff cannot establish that a defendant acted with a 'criminal or tortious' purpose simply by proving that the defendant committed any tort or crime." *Id*. at 516 (citing *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999)). Rather, the crime/tort

exception is only applicable where the interception is utilized for the "purpose" of committing an independent crime or tort. In *Sussman*, the Ninth Circuit held that:

> [u]nder section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception - its intended use - was criminal or tortious...Where the purpose [of a taping] is not illegal or tortious, but the means are, the victims must seek redress elsewhere…***Although ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape***.

*Sussman*, 186 F.3d at 1202-1203 (emphasis added); *Cooper v. Slice Technologies, Inc*., 2018 WL 2727888, at *4 (S.D.N.Y. June 6, 2018) (finding that application of the criminal or tortious act exception cannot rely on violation of ECPA itself because that is a circular argument that ignores the statutory consent exception within ECPA); *U.S. v. DiFelice*, 837 F. Supp. 81, 82 (S.D.N.Y. 1993) (finding that, even "[a]ssuming that [defendant's] recordings violated [state] law, that fact by itself does not establish that he intercepted the conversations" for a criminal or tortious purpose).

Here, Plaintiffs argue that the crime-tort exception applies solely based on their CIPA, intrusion on seclusion, and invasion of privacy claims. Compl. ¶147. But these claims do not establish an independent crime or tortious purpose; they merely rely on the alleged interceptions themselves. Compl. ¶¶43, 45, 47, 49, 59-60. This is fatal to Plaintiffs' ECPA claim. *See Sussman*, 186 F.3d at 1202; *DeFelice*, 837 F. Supp. at 82; *Cooper*, 2018 WL 2727888, at *4.

Second, like CIPA, ECPA requires a showing of the intentional interception of the "contents" of electric communications in real time. 18 U.S.C. 2511(1). Also like CIPA, ECPA has a scienter requirement, which requires a defendant's interception of "content" to be "intentional." *Id.* Courts routinely apply the same standard to ECPA claims as they do to CIPA claims when addressing the substance of such claims. *Brodsky*, 445 F. Supp. 3d at 127 (noting that

the analysis of contents is the same under CIPA and ECPA); *Pena*, 670 F. Supp. 3d at 1120 (finding that CIPA and ECPA both require interception during the course of transmission). As detailed above, Plaintiffs' CIPA claims should be dismissed because the Complaint fails to allege that DeepIntent intentionally intercepted content in transit – and because Plaintiffs do not have standing to bring a claim. For the same reasons, Plaintiffs' ECPA claims should be dismissed. *See Brodsky*, 445 F. Supp. 3d at 127-28 (dismissing claim for failure to allege contents of intercepted communications); *Pena*, 670 F. Supp. 3d at 1120 (granting motion to dismiss where plaintiff failed to allege interception actionable under ECPA or CIPA).

### C. Plaintiffs' Claims For Intrusion Upon Seclusion And Invasion Of Privacy Must Be Dismissed.

In Counts III and IV, Plaintiffs state causes of action for intrusion upon seclusion and violation of California's constitutional right to privacy. While these causes of action have different but overlapping elements, when both are brought in a single case, Courts subject them "to a 'combined inquiry' to determine (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification or other relevant interests." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021) (internal quotations omitted).[4]

Here, the allegations in the Complaint do not satisfy these elements. California courts generally do not recognize a reasonable expectation of privacy over internet browsing activity.

[4] To support a cause of action for violation of California's constitutional right to privacy, the plaintiff must establish a legally protected privacy interest, a reasonable expectation of privacy, and a serious invasion of that privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 39-40 (1994). Legally protected privacy interests may include "interests in precluding the dissemination or misuse of sensitive and confidential information." *Id.* at 35. Likewise, for an intrusion upon seclusion claim, a plaintiff must establish "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 601 (9th Cir. 2020).

*See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at*2 (S.D. Cal. May 8, 2024) ("[T]he internet is not a place where users have a reasonable expectation of privacy") (collecting cases); *Heeger*, 509 F. Supp. 3d at 1189; *Lopez*, 519 F. Supp 3d at 691 (finding that plaintiffs did not sufficiently allege a privacy interest where they failed to allege specific circumstances showing that the scale or pervasiveness of the Siri triggers – audio cues that prompt Siri to start listening - give rise to a privacy invasion). Nor should they.

Plaintiffs' argument that they had a "reasonable expectation" of privacy over their visits to private websites is, as a matter of law, insufficient to meet the first element of their claims. *See id*. That is particularly true here, where Plaintiffs cannot even allege that DeepIntent knew any information about their identities or they were subject of any of the targeted advertisements upon which their claims are premised. Moreover, as detailed above, the information allegedly collected and read by DeepIntent was nonsensitive record information about browsing activity (*e.g.*, IP addresses, geolocation and URLs). Courts have repeatedly held that individuals do not have a reasonable expectation of privacy over this type of information. *See id*.

Moreover, to satisfy the second prong (offensiveness), Plaintiffs would need to allege that their browsing activity would reveal sensitive information, not merely that they browsed the website. In *Wright v. Truecare Property Holdings, LLC*, the Southern District of California dismissed the complaint after determining that the plaintiff had not alleged specific private information had been intercepted because her complaint alleged only that she visited the website, not what that visit revealed about her healthcare information. 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025).

The Court opined:

> Plaintiff's factual allegations show only that she used Defendant's website, but not how she used it or what her visits revealed about her healthcare information. Because Plaintiff has not alleged specific private information, the Court cannot analyze whether the alleged intrusion upon that information is so egregious as to constitute a breach of social norms.

*Id*; *see also Beltran*, 2025 WL 1635467, at *7-8 (dismissing complaint because conclusory allegations of interception of medical data did not establish a reasonable expectation of privacy where it was not clear from the complaint whether the browsing activity pertained to the plaintiffs' own medical information).

Here, Plaintiffs seek to rely on the notion that collecting any information about their visits to consumer health websites is inherently offensive. Compl. ¶¶¶161-162. But, Plaintiffs fail to allege anything about their visits to these websites. They do not allege what they searched or which articles they read. They do not even allege that they actually made any searches or clicked on any articles. The only purported searches referenced in the Complaint were searches apparently made by third parties, not Plaintiffs. Compl. ¶55. Further, while Plaintiffs claim that they visited the sites to learn about medical conditions, they do not allege what those medical conditions are, nor do Plaintiffs allege whether they had those medical conditions or if they were just seeking to learn about medical conditions merely for educational purposes. Plaintiffs' vague and conclusory allegations cannot be the basis for a constitutional invasion of privacy or an intrusion upon seclusion claim. *Beltran*, 2025 WL 1635467, at *7-8; *Wright*, 2025 WL 3248749, at *4. Accordingly, the court should dismiss Counts III and IV of the Complaint for failure to state a claim.[5]

[5] Plaintiffs also lack standing to bring these claims for the same reasons that they lack standing to bring their CIPA Section 631, clause 2, claim (because they have not alleged an injury in fact).

**D. <u>Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.</u>**

Plaintiffs' unjust enrichment claim should be dismissed because it is not a separate cause of action under California law. *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action") (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)); *Brodsky*, 445 F. Supp. 3d at 132 (noting that "courts have consistently dismissed stand-alone claims for unjust enrichment"). Further, the unjust enrichment claim is simply duplicative of Plaintiffs' other causes of action, which in of itself supports dismissal. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 168 (S.D.N.Y. 2023) ("Even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"). Here, even if Plaintiffs could bring a standalone unjust enrichment claim (they cannot), the cause of action should be dismissed as the alleged underlying conduct is the same as that underlying Plaintiffs' other claims, and they should not be permitted to seek to doubly recover.

**E. <u>Plaintiffs' Declaratory Judgment Claim Should Be Dismissed</u>.**

Plaintiffs' claim for declaratory relief related to DeepIntent's alleged tracking activity should be dismissed for the same reasons that render Plaintiffs' other causes of action deficient. Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such declaration" in "a case of actual controversy." 28 U.S.C. § 2201(a). This "request for a remedy . . . does not exist independent of a plausible underlying claim for relief." *Performing Arts Ctr. v. Actor's Equity Ass'n*, 2022 WL 16755284, at *16 (E.D.N.Y. Aug. 25, 2022). Accordingly, where the underlying claims have been dismissed, the declaratory judgment cause of action must be dismissed as well. *VW Credit Leasing*

*LTD v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 290 (E.D.N.Y. 2024) (dismissing declaratory judgment claims where tied to underlying claims which the Court had already found in defendants' favor). For the reasons expressed above, Plaintiffs' claims are deficient and should be dismissed, and their declaratory judgment claim thus must be dismissed as well.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Dismiss pursuant to Rule 12(b)(6) and 12(b)(1) with prejudice.

Date: January 12, 2026

Respectfully submitted,

**BLANK ROME LLP**
By: */s/ Michael D. Silberfarb*
Michael D. Silberfarb: MS-9678
1271 Avenue of the Americas
New York, NY 10020
Phone: 212-885-5356
Email: Michael.Silberfarb@BlankRome.com

*Counsel for Defendant*

**CERTIFICATE OF COMPLIANCE**

I, Michael D. Silberfarb, hereby certify, pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss is 8,244 words in length.

Date: January 12, 2026

By: *<u>/s/ Michael D. Silberfarb</u>*
Michael D. Silberfarb