**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NINA HARRIS and GERALD HARRIS, individually and on behalf of those similarly situated,<br><br>*Plaintiffs,*<br>v.<br><br>DEEPINTENT TECHNOLOGIES, INC.,<br><br>*Defendant.* | Civil Action No. 1:25-cv-08949 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: May 18, 2026

Michael D. Silberfarb
Philip N. Yannella (*pro hac vice*)
**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Michael.Silberfarb@blankrome.com
Philip.Yannella@blankrome.com

Counsel for Defendant
Deepintent Technologies, Inc.

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1
II. FACTUAL BACKGROUND ........ 3
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 6
A. All Of Plaintiffs' Claims Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(1). ........ 6
1. Privacy Violations. ........ 7
2. Economic Value-Based Arguments. ........ 14
B. The FAC Should Be Dismissed For Failure To State A Claim. ........ 15
1. Plaintiffs' CIPA Claims Should Be Dismissed. ........ 15
2. Plaintiffs' Claim Under The First Clause Of CIPA § 631(a) Should Be Dismissed. ........ 16
3. Plaintiffs' Claim Under the Second Clause of CIPA § 631(a) Should Be Dismissed. ........ 16
4. Plaintiffs Cannot Establish That DeepIntent Installed Pen Registers Under CIPA. ........ 18
5. Plaintiffs' Claims Under ECPA Should Be Dismissed Because the Websites Consented to DeepIntent's Use of Trackers. ........ 21
6. Plaintiffs' Claims For Intrusion Upon Seclusion And Invasion Of Privacy Must Be Dismissed. ........ 23
7. Plaintiffs' Claim Under California's Unfair Competition Law ("UCL") Must Be Dismissed. ........ 24
8. Plaintiffs' Declaratory Judgment Claim Should Be Dismissed. ........ 26
9. Claims By Mr. Harris Should Be Dismissed. ........ 26
V. CONCLUSION ........ 27

## TABLE OF AUTHORITIES

*Aquino-Roraldo v. Med. Management Intl. Inc*., 2026 WL 1092905 (D. Ore. 2026)....................9

*Archer v. United Rentals, Inc.*, 195 Cal.App.4th 807 (2011).....................................................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................5

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .....................................27

*Beltran v. Doctors Medical Ctr. Of Modesto*, 2025 WL 1635467 (E.D. Cal. 2025)..........................................................................................................13, 23, 27

*Butler v. U.S. Bank Corp*., 2026 WL 883904 (D. Minn. 2026)............................................10, 11

*Camm v. Reach Financial, LLC*, 2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) ....................21, 22

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010).......................................................................11, 21

*Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025).............................11

*Casillas v. Madison Avenue Associates, Inc*., 926 F.3d 329 (7th Cir. 2019).................................6

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)...........19

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024)..........................................................16

*Cooper v. Slice Technologies, Inc*., 2018 WL 2727888 (S.D.N.Y. June 6, 2018)................22, 23

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..................................13, 24

*Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008)....................................................................5

*Diaz v. Paramount Skydance Corp*., 2026 WL 1090958 (C.D. Cal. Apr. 20, 2026)...................12

*Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......................17

*Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350 (2010) .........................................................25

*Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. 2025) ............................................6, 8, 20

*Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022).....................................................................................18

*Harrill v. Emanuel Medical Center*, 2025 WL 1635428 (E.D. Cal. 2025).....................13, 24, 26

*Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................................8, 20, 23

*Henson v. Turn, Inc.*, 2018 WL 6605624 (N.D. Cal. Dec. 17, 2018)...........................................7

*Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir. 1994) ....................5

*Hughes v. Vivint, Inc.*, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ....................7

*In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................21, 22

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)....................14

*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020)....................16

*In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272 (C.D. Cal. 2001) ....................21

*In re USA Today Privacy Litigation*, 2026 WL 932655 (N.D. Cal. Apr. 27, 2026) ....................8

*In re Zappos.com, Inc.*,888 F.3d 1020 (9th Cir. 2018)....................7

*Jones v. Tonal Sys. Inc.*, 751 F. Supp. 3d. 1025 (S.D. Cal. 2024) ....................17

*Kahmooshi v. Politico, LLC*, 2025 WL 2822879 (N.D. Cal. 2025) ....................14

*Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011) ....................25

*Lewis v. Magnite, Inc.*, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ....................27

*Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Sup. Ct. Mar. 13, 2024) ....................19

*Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023)....................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................5, 6

*Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026).......11, 12, 14

*Manier et al. v. Triple Lift Inc. et al.*, 2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ....................25

*Moss v. ResortPass, Inc*., 2025 WL 3452360 (Cal. Super. Oct. 30, 2025) ....................17

*Nienaber v. Overlake Hosp. Med. Ctr*., 733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................13, 23

*NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................26

*Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663 (C.D. Cal. 2024) ....................14

*Performing Arts Ctr. v. Actor's Equity Ass'n*, 2022 WL 16755284 (E.D.N.Y. Aug. 25, 2022)....................26

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ....................9

*Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632 (1996) ....................24

*Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613 (9th Cir. 2021) ....26

*Saeedy v. Microsoft Corp*., 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....8

*Sanchez v. Cars.com Inc*., 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ....19

*Sisti v. Bosley, Inc*., 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ....10, 14

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) ....12, 14

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ....25

*Sussman v. ABC*, 186 F.3d 1200 (9th Cir. 1999) ....22, 23

*Swarts v. Home Depot, Inc.,* 689 F. Supp. 3d 732 (N.D. Cal. 2023) ....16

*Tash v. Vision Services Plan*, 2026 WL 1012680 (E.D. Cal. Apr. 14 2026) ....15

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. 2024) ....23

*Timothee v. Meta Platforms, Inc*., 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ....13

*Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. 2025) ....17

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....6

*U.S. v. DiFelice*, 837 F. Supp. 81 (S.D.N.Y. 1983) ....22

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ....21

*United States v. Jenkins*, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) ....8

*United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016) ....8

*VW Credit Leasing LTD v. Runway Towing Corp.*, 757 F. Supp. 3d 271 (E.D.N.Y. 2024) ....26

*Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989 (N.D. Cal. 2024) ....17

*Wright v. Truecare Property Holdings*, 2025 WL 3248749 (S.D. Cal. 2025) ....13, 24

Defendant DeepIntent Technologies, Inc. ("DeepIntent"), by and through its undersigned counsel, files this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction (standing) pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I. PRELIMINARY STATEMENT

This is one of thousands of cases filed in the last four years which attempt to improperly extend the reach of the California Invasion of Privacy Act ("CIPA") and related causes of actions to situations where there has been no privacy injury. CIPA is a criminal wiretapping statute that was enacted in the 1960s. It was meant to protect against wiretapping of telephonic conversations, not the interception of searches on the internet (which did not exist at the time CIPA was enacted). Despite this, approximately four years ago, a California court allowed a case applying CIPA to internet technologies to advance past the pleading stage. This opened the floodgates. Attorneys across the country began filing CIPA internet cases on a daily basis. Initially, these cases focused on the interception of sensitive private communications, where there could arguably be a reasonable expectation of privacy (e.g., communications about medical conditions between a doctor and patient that took place in a private patient portal). As those types of cases dried up, plaintiffs' attorneys have sought to extend the reach of CIPA even further - to instances where there could be no reasonable expectation of privacy (such as public searches on the open internet which reveal no private information about the plaintiff).

This case falls squarely into the latter category. Plaintiffs' case rests entirely on allegations that DeepIntent intercepted generic searches about medical conditions on ***public*** internet websites and sent Plaintiffs targeted ads based on those searches. Courts have repeatedly held that (even where there are allegations of "tracking" across multiple websites) the interception and use of these

types of internet searches cannot constitute a concrete privacy injury – and cannot be used to establish Article III standing.

Crucially, unlike in cases where courts have found that a privacy injury has occurred, Plaintiffs here do not allege that the "intercepted" searches took place in a patient portal or other protected area where they would have an expectation of privacy. They do not allege that DeepIntent intercepted or learned their personal identifying information ("PII") or protected health information ("PHI"). They do not allege that there has been a violation of HIPAA or any similar statute. And, they do not allege that DeepIntent learned their specific identities (until they publicly filed the Complaint in this case). Thus, the allegations in the FAC do not come close to stating a cognizable privacy injury. As such, Plaintiffs do not have Article III standing, and the FAC must be dismissed in its entirety.

And, even if that were not the case, each of the causes of action in the FAC should be dismissed for failure to state a claim.

Specifically, Plaintiffs' claims under the "pen register clause" and clause 1 of CIPA should be dismissed because those clauses apply only to the wiretapping of telephones or telegraphs, not the internet technologies allegedly used here. The CIPA clause 2 claims should be dismissed because Plaintiffs have not alleged that DeepIntent "read or learned" the contents of Plaintiffs' communications while such communications were "in transit."

Plaintiffs' claim under the Electronic Communications Privacy Act of 1986 ("ECPA"), should be dismissed because ECPA is "a single-party consent statute," which means that if one party to the communication consents to an alleged interception, there can be no claim. Thus, because Plaintiffs admit that the websites with which they communicated consented to the use of, and installed, DeepIntent's technology, the ECPA claim must be dismissed.

Plaintiffs' intrusion upon seclusion and invasion of privacy claims must fail because Plaintiffs do not allege that they had a reasonable expectation of privacy in the information allegedly intercepted or that DeepIntent engaged in "highly offensive" activity. Courts have repeatedly held that where, as here, the alleged interception and use of public internet searches do not reveal the searcher's identity or private health information, a plaintiff cannot state a claim for intrusion upon seclusion or invasion of privacy.

And, Plaintiffs' claim under California's unfair competition statute must be dismissed because Plaintiffs have failed to allege how DeepIntent's alleged business practices were either unlawful or unfair, or how Plaintiffs suffered economic injury as a result of DeepIntent's conduct, as required by the statute.

Moreover, even if the Court does not dismiss the FAC in its entirety, the claims brought by Mr. Harris should be dismissed because his claims are completely dependent on internet searches that he made, but he does not provide any detail about what he searched for, when specifically he made the searches, or whether the searches disclosed his identity or his own medical conditions. As a matter of due process, these allegations are too sparse to maintain any claim.

For these reasons, and the additional reasons set forth below, DeepIntent respectfully asks that the Court dismiss the FAC in its entirety.

## II. FACTUAL BACKGROUND

DeepIntent assumes the factual allegations in the FAC to be true solely for purposes of this Motion. In describing the factual allegations in the FAC, DeepIntent does not admit that any of the allegations are accurate.

DeepIntent assists healthcare companies with placing targeted advertisements on health-related websites. FAC ¶¶2, 45. The FAC alleges that DeepIntent deploys basic internet software and technology, often called "cookies" and "beacons," to track certain internet activity, so that it

can optimize who receives the advertisements. FAC ¶¶44-45. The technology used by DeepIntent is commonly used in the digital advertising industry. FAC ¶¶17-32. Based on (erroneous) assumptions about DeepIntent's business, the FAC alleges that DeepIntent could have "intercepted" private information about individuals' medical conditions. FAC ¶¶55, 64, 68.

Plaintiffs are two California residents—Mrs. Harris and Mr. Harris, a husband and wife—who claim that certain of their internet activities were "tracked" by DeepIntent. FAC ¶¶7-8. In support of these allegations, the FAC alleges that Plaintiffs "visited" certain healthcare-related public websites through which DeepIntent deploys its technology to learn about "medical conditions." FAC ¶¶92-113. The FAC asserts that DeepIntent's technology allowed it to track certain information (such as IP addresses, search activity and "clicks"), but it does not allege that any of this activity was specifically tied to Plaintiffs as individuals. *Id*.

The FAC does not allege that DeepIntent or its customers ever knew Plaintiffs' identities or anything about their PII or PHI. Instead, the FAC hypothesizes that, if certain conditions are present, the type of technology utilized by DeepIntent "can result" in individuals being "re-identified". FAC ¶¶117-118.

The FAC alleges that Plaintiffs did not consent to *DeepIntent's* utilization of the commonly employed digital internet technology; however, it does not deny that Plaintiffs consented to the use of the technology more generally. FAC ¶¶121-128.

Plaintiffs bring six causes of action against DeepIntent: violation of CIPA through wiretapping and use of a pen register (Count I); violation of ECPA (Count II); invasion of privacy under the California Constitution (Count III); intrusion upon seclusion under California common law (Count IV); violation of California's Unfair Competition Law (Count V); and Declaratory Judgment (Count VI). Plaintiffs seek to certify nationwide and California-wide classes of

individuals who interacted in any way with DeepIntent's technology on the internet, irrespective of whether those interactions involved allegations similar to those made by Plaintiffs.

For the reasons identified below, each of these claims should be dismissed.

## III. LEGAL STANDARD

A defendant may move to dismiss a complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1). An Article III standing inquiry "focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "The party invoking federal jurisdiction bears the burden of establishing the[] elements" of Article III standing, which include establishing that plaintiffs suffered an injury in fact, "trace[able] to the challenged action of the defendant" and redressable by a favorable decision by the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Additionally, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is mandated where the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To withstand a motion to dismiss pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. All Of Plaintiffs' Claims Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(1).

Article III of the Constitution only gives federal courts the power to resolve "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish standing, a plaintiff must show that she has suffered an injury in fact that is (1) concrete and particularized; and (2) actual or imminent. *Lujan*, 504 U.S. at 560. A plaintiff must also show that the injury is traceable to the defendant's alleged conduct and that it is likely that the injury is redressable by judicial relief. *Id*. at 560–61.

It is not enough that the party suffers harm as a result of a statutory violation. *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *3 (S.D.N.Y. 2025) (denying CIPA claim where no harm was independent of a statutory violation) (citing *Transunion*, 594 U.S. at 424 and *Casillas v. Madison Avenue Associates, Inc*., 926 F.3d 329, 332 (7th Cir. 2019) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.")). Rather, to satisfy the Article III standing requirement, a plaintiff must allege it has suffered a "concrete" injury that "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Gabrielli*, 2025 WL 522515, at *3. To determine whether an alleged harm is concrete, "the Court must ask whether the plaintiff has 'identified a close historical or common-law analogue for their asserted injury.'" *Transunion*, 594 U.S., at 424. Examples of intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*. at 425.

Plaintiffs allege they have been harmed in three ways: (i) sensitive and confidential health-related information that Plaintiffs and California Subclass Members intended to remain private is no longer private; (ii) "DeepIntent took something of value from Plaintiffs and California Subclass Members and derived benefit therefrom without Plaintiffs' and California Subclass Members'

knowledge or informed consent and without sharing the benefit of such value;" and (iii) "DeepIntent's actions diminished the value of Plaintiffs' and California Subclass Members' personal information." FAC ¶206. None of these alleged harms are sufficiently concrete to confer Article III standing.

**1. <u>Privacy Violations.</u>**

The alleged privacy violations fail to confer standing for several reasons.

First, a privacy injury can only constitute "concrete harm" if it results in the disclosure or use of personally identifiable and private information. To meet this standard, a plaintiff must show that the information collected constituted PII or "personal identifying information," *i.e.*, information that specifically identifies the individual. *E.g.*, *Henson v. Turn, Inc.*, 2018 WL 6605624, at *4 (N.D. Cal. Dec. 17, 2018) ("Because Plaintiffs have not alleged that their data is confidential and ***readily recognizable and identifiable as belonging to any particular person***, the Court finds that they have failed to state a cognizable injury.") (emphasis added); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024) (if "Plaintiff's identity would not be connected with the anonymous information, … [then] seemingly no harm would have occurred."). As the term implies, PII includes information that can be used to identify a specific individual, such as "names, account numbers, passwords, email addresses, billing and shipping addresses." *In re Zappos.com, Inc.*,888 F.3d 1020, 1023 (9th Cir. 2018). It does not include disclosure of information that is not tied to specific individual, such as IP addresses, device types or geolocation.

Here, the FAC does not allege that any of the information allegedly intercepted by DeepIntent could be tied to Plaintiffs as individuals. Rather, the FAC alleges that "when a user visits a DeepIntent-integrated website, DeepIntent also receives the user's IP address, through which DeepIntent can determine the user's state, city, and zip code." FAC ¶62; *id.* ¶74 ("This information can include a user's demographic information. . . lifestyle and interest data. . .and

location-based signals"); *id*. ¶90 ("DeepIntent infers [from IP addresses] highly sensitive health information from a person's physical location."). But, IP addresses are not tied to a specific individual—they are tied to devices. *United States v. Jenkins*, 2019 WL 1568154, at *4 (N.D. Ga. Apr. 11, 2019) ("IP address information … does not follow [a] person around. Indeed, it does not even identify the user, just the location of internet access."). As such, Courts have uniformly recognized that IP addresses and information gleaned from them (such as geolocation), do not constitute PII and cannot be a basis for a privacy based standing argument. *Gabrielli*, 2025 WL 522515 at *4 ("[A]n IP address which cannot identify an individual user and at most conveys general geographic information does not" confer standing); *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016) ("Generally, one has no reasonable expectation of privacy in an IP address when using the Internet."); *Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("Plaintiffs do not plausibly allege anything more than the collection of IP addresses, and there is no legally protected privacy interest in IP addresses"). The same is true of internet searches and other information such as "device types, browsers, operating systems…timestamps, and other technical identifiers" which Plaintiffs also claim are intercepted. FAC ¶95; *see Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no standing to allege CIPA claim because text "entered into an information field" and pages visited were not "private" information); *Saeedy v. Microsoft Corp*., 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("[M]ouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities" are insufficiently personal); *In re USA Today Privacy Litigation*, 2026 WL 932655, at *2 (N.D. Cal. Apr. 27, 2026) (recognizing that "it is well-established that there is no legally protected

privacy interest in information such as device type and browser type" and citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) as "affirming dismissal of privacy claim predicated on, inter alia, device type and browser type; finding plaintiff failed to show how tracking of such information 'is remotely similar to the "highly offensive" interferences or disclosures that were actionable at common law'").

Despite this, Plaintiffs assert that they have standing because DeepIntent's software allegedly "tracks" users (IP addresses and other "persistent identifiers") across multiple websites and builds profiles of such users, which are then used to create "audiences" that receive targeted advertisements. But, the mere tracking of an individual by "unique identifiers" does not constitute a privacy injury. A plaintiff still must allege that plaintiff's PII *and* sensitive personal information were disclosed. *Id*; *see also Aquino-Roraldo v. Med. Management Intl. Inc*., 2026 WL 1092905, at *6 (D. Ore. 2026) (dismissing case despite allegations of tracking where no traditionally sensitive information was revealed and noting that "in online tracking cases, the standing analysis for invasion of privacy claims has focused on the type of information that was allegedly tracked and disclosed and whether that information implicated a protectable privacy interest."). The allegations about tracking in the FAC satisfy neither requirement.

In all of the pages and pages of (inaccurate) allegations about DeepIntent's business model, Plaintiffs do not allege that DeepIntent learned any information that is actually tied to Plaintiffs' PII. Plaintiffs merely speculate that "[w]hen combined with unique health-related behaviors, an 'anonymous' profile ***can*** become probabilistically linked to a real person. This is especially true given that certain medical conditions are extremely rare." FAC ¶117; *id*. ¶118 ("[E]ven if a user with such a condition were placed in a larger 'audience' by DeepIntent, ***it would not be challenging*** to single that person out in the audience, especially with the wealth of other data collected by

DeepIntent on that person."); *id*. ¶119 ("[O]stensibly pseudonymized data, like that surreptitiously collected by DeepIntent, ***can be used*** to identify and target a specific individual.") (emphases added). Such speculation about what "can" or "might" hypothetically happen, or that a party could identify an individual, is not a basis for standing. *Sisti v. Bosley*, *Inc*., 2026 WL 1223927, at *4 (C.D. Cal. Apr. 27, 2026) (dismissing case on standing grounds where "Plaintiff alleges only that Bosley disclosed 'the fact' that Plaintiff had filled out Bosley's scheduler form, along with 'identifiers' that ***enabled*** Meta and TikTok to identify him specifically -- nothing more.").

The mere fact that Plaintiffs claim to have searched for what they describe as "sensitive" medical information also does not change the analysis. As an initial matter, the FAC does not sufficiently allege that the medical information allegedly searched was in fact "sensitive." For example, the FAC does not even say what information Plaintiff Mr. Harris searched, and instead alleges that he made "searches" about a "medical condition" on Ozempic.com. FAC ¶¶8, 108-112. This type of conclusory allegation is insufficient to establish standing. *See Butler v. U.S. Bank Corp*., 2026 WL 883904, at *3 (D. Minn. 2026) ("Absent any specific description of what information Butler inputted, the Court cannot conclude that the harm Butler alleges reaches the level of highly offensive disclosures required for a finding of injury in fact."). As to Plaintiff Mrs. Harris, she merely alleges that she searched two websites sometime in "approximately 2023 and 2024" about a specific medical procedure (which is identified but redacted) and that such searches were intercepted and used to target her for advertisements. FAC ¶¶7, 94-111. She does not identify: (i) any specific medical condition she searched for on behalf of herself; (ii) any further details about what specific searches were made or when in the approximately two-year period they were made; or (iii) which information was searched for on which website. Like her husband's allegations, her vague and unspecific allegations claiming that she searched for sensitive medical

information are insufficient to confer standing. *Butler*, 2026 WL 883904, at *3; *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (to assert a privacy violation sufficient for Article III injury, the information disclosed must be "actually personal and private").[1]

Moreover, even if Plaintiffs adequately alleged that DeepIntent intercepted sensitive information, they still have not established standing because they failed to also allege that DeepIntent intercepted *PII*. Three months ago, the Southern District of California addressed nearly identical circumstances to those here. In *Maghoney v. Dotdash Meredith Inc*. the plaintiff alleged that the defendant:

> ***systematically intercepted, recorded, and disclosed Plaintiff's private information to third-parties***…[which included] ***his sensitive health information***, page navigation history, and metadata associated with his site visit, including his Internet Protocol ("IP") address and device identifiers.

2026 WL 497402 at *2 (emphasis added). He further alleged that the information was sold to third parties, including Google Analytics, which "profiled [his] health-related interests for targeted advertising and monetization." *Id.* Despite these allegations, the court held that plaintiff had not identified a concrete injury because the plaintiff had not alleged that any of his PII had been intercepted or used by the defendant:

> Plaintiff does not allege anyone directly contacted him related to his searches. Or that his searches were made publicly visible. ***Plaintiff does not allege that his name, postal address, email address, telephone number, or any other personal identifiers were collected. And Plaintiff does not allege any of his searches were directly linked to his name or other personally identifiable information.*** At most, the data was associated with an IP address and other metadata, which does not automatically qualify as personally identifiable information.

[1] Mrs. Harris also alleges that she searched for certain generic organ diseases on behalf of her husband. But, again, she does not state particularly what condition was searched or when she made the search, and she does not explain why her privacy interests have been violated through the alleged collection of her searches about someone else.

*Id*. at 5 (emphasis added). The *Maghoney* Court thus made clear that even when a party searches about very sensitive medical information (the *Maghoney* plaintiff performed searches about a sexually transmitted disease), there is no harm to a privacy interest unless the searches reveal who he is through the disclosure of PII. Anonymized searches on the internet are not protected.

Here, as detailed above, while Plaintiffs allege that DeepIntent "intercepted" their IP addresses and other record information together with searches about medical conditions and procedures, they do not allege anywhere that DeepIntent intercepted any PII. *See supra* at pp.8-11. As such, Plaintiffs have no standing based on an alleged privacy violation. *Diaz v. Paramount Skydance Corp*., 2026 WL 1090958, at *4 (C.D. Cal. Apr. 20, 2026) (no concrete privacy injury because "[p]laintiffs admit the information shared to third parties does not by itself link their watch history to them as individuals")

Plaintiffs also lack standing for another, independent, reason. The interception and/or use of generic health-related searches on public websites does not, as a matter of law, constitute a privacy injury. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history."). As *Maghoney* explained, such searches, by themselves, do not reveal private medical information about the individual:

> Plaintiff merely searched sensitive health related terms. As Dotdash argues, '[a]nyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings could enter these searches into an informational health website.' (Doc. No. 21-1 at 23.) The Court agrees. Dotdash's website is not a patient portal.

2026 WL 2026 WL 497402 at *5. Applying these principles, *Maghoney* held that the plaintiff did not allege a concrete privacy injury because, unlike communications in a patient portal which

reveal the searcher's medical condition, the searches made by the plaintiff only revealed that he was interested in learning about a particular condition (not that he had the condition). *Id*; *see also Beltran v. Doctors Medical Ctr. Of Modesto*, 2025 WL 1635467, at *6 (E.D. Cal. 2025) (no privacy injury because, while the plaintiffs allegedly made generic searches about medical conditions on a public facing website, they did "not allege using Defendants' Website to schedule an appointment, call a doctor's office, refill a prescription, view test results, review notes from an appointment, or access a patient portal—types of activity that courts have found to be sufficient to demonstrate disclosure of PHI"); *Harrill v. Emanuel Medical Center*, 2025 WL 1635428, at *5 (E.D. Cal. 2025) (no privacy injury based on generic searches for medical content because "[a]n internet user might research medical information for reasons unrelated to the user's own health conditions"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023) (collecting and sharing browsing activity related to health information does not constitute disclosure of sensitive health information unless it reveals PHI); *Nienaber v. Overlake Hosp. Med. Ctr*., 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024) (no privacy interest in a generic search for the word "cancer"); *Wright v. Truecare Property Holdings*, 2025 WL 3248749, at *2 (S.D. Cal. 2025) ("The mere fact that Plaintiff used Defendant's website [to make healthcare-related searches] does not constitute PHI because it does not necessarily reveal any information related to her healthcare, conditions, or patient status."); *Timothee v. Meta Platforms, Inc*., 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) (no privacy injury where "sensitive" information not tied to individual searching).

Here, Plaintiffs allege only that DeepIntent intercepted generic searches about medical conditions that they made on the public internet. FAC ¶¶94-111. The searches were not made on patient portals, and they did not reveal that Plaintiffs had any particular condition. Indeed, Mrs.

Harris specifically admits that certain of her searches were made on behalf of someone else (her husband). Thus, as was the case in *Maghoney*, *Smith* and the numerous other cases that have addressed this issue, DeepIntent's alleged interception of searches of generic medical conditions on public websites cannot, as a matter of law, constitute concrete harm.

**2. Economic Value-Based Arguments.**

Plaintiffs allege that they were harmed because DeepIntent took something of value from them (their internet search data) or diminished the value of their search data. FAC ¶¶129-140. But this argument should be rejected because, while Plaintiffs allege that the data had value to DeepIntent when aggregated with other data, Plaintiffs do not allege: (i) that the data had independent value to Plaintiffs; (ii) how the value of the data to Plaintiffs was diminished; (iii) how DeepIntent's use of the data harmed the plaintiffs; or (iv) that DeepIntent deprived the Plaintiffs of any value they might have had in the data. *Kahmooshi v. Politico, LLC*, 2025 WL 2822879, at *4 (N.D. Cal. 2025) ("[A]lthough it's true that each user's information is worth a certain amount of money to [Defendant], it does not follow that the same information, when not disclosed, has independent economic value to an individual user."); *Sisti,* 2026 WL 1223927, at *4 ("Plaintiff's allegations that Bosley received 'substantial financial benefits' and 'substantial, quantifiable value' from their alleged collection and use of Plaintiff's personal information fail to allege any concrete injury, because Plaintiff does not allege that any such benefits resulted in actual harm to Plaintiff"); *USA Today*, 2026 WL 932655, at *3 ("[P]laintiffs fail to adequately allege collection by USA Today of information in which plaintiffs had a legally protected privacy interest and, consequently, fail to allege any profit earned therefrom was unjust."); *Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663, at *6 (C.D. Cal. 2024) (to survive a motion to dismiss on this theory of lost value, a plaintiff "must establish both the existence of a market for h[is] personal information and an impairment of h[is] ability to participate in that market"); *In re*

*Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (because plaintiffs do not "plausibly allege that someone else would have bought [plaintiff's data] as a stand-alone product, [t]he plaintiffs' economic-loss theory is…purely hypothetical and does not give rise to standing"); *Tash v. Vision Services Plan*, 2026 WL 1012680, *5 (E.D. Cal. Apr. 14 2026) ("Though the Complaint describes the value of this information in the hands of both third parties and Plaintiffs…it does not identify how the value of that information has diminished because of Defendants' actions. Therefore, this allegation does not support the finding that Hahn suffered economic injury.").

**B. <u>The FAC Should Be Dismissed For Failure To State A Claim</u>.**

Even if Plaintiffs had standing to bring their claims, the FAC should be dismissed in its entirety because Plaintiffs have failed to sufficiently plead the elements of their claims.

**1. <u>Plaintiffs' CIPA Claims Should Be Dismissed.</u>**

Plaintiffs advance claims under Sections 631 and 638.51 of CIPA. Section 631 is divided into four "clauses," two of which are implicated here. Specifically, the first two clauses provide that "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner,"

> [Clause 1] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or
>
> [Clause 2] in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state...

CIPA § 631(a). While Plaintiffs conflate the two clauses and read them as a single cause of action, courts routinely and correctly read them as giving rise to independent causes of action, which are

evaluated separately. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) ("in recognizing the distinction between the language of clause one and two, courts have applied the second clause to internet communications," but not the first clause).

Section 638.51(a) prohibits the installation of a pen register, which is defined as a device that "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which wire or electronic communication is transmitted, but not the contents of a communication." CIPA §§ 638.50(b); 638.51(a).

As explained below, Plaintiffs cannot establish the elements of their claims under Sections 631 or 638.51(a).

**2. <u>Plaintiffs' Claim Under The First Clause Of CIPA § 631(a) Should Be Dismissed.</u>**

The first clause of CIPA § 631(a) prohibits the intentional tapping or unauthorized connection, "by means of any machine, instrument, or contrivance," "with any telegraph or telephone wire, line, cable, or instrument." CIPA § 631(a). Courts interpreting the "plain text of the statute," have repeatedly held that this clause "protects only communications that are made over a wire, line, or cable." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (internal citation omitted); *see Swarts v. Home Depot, Inc.,* 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) ("Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet").

Here, Plaintiffs do not allege any conduct over telephone or telegraph. Accordingly, Plaintiffs' claim brought under the first clause of CIPA Section 631(a) must be dismissed.

**3. <u>Plaintiffs' Claim Under the Second Clause of CIPA § 631(a) Should Be Dismissed.</u>**

Plaintiffs cannot state a claim under the second clause of Section 631(a) because they have not alleged that the contents of any conversations were intercepted "in transit." To be liable under

that clause, "a defendant must have 'read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received.'" *Jones v. Tonal Sys. Inc.*, 751 F. Supp. 3d. 1025, 1036 (S.D. Cal. 2024). An allegation that the contents of a communication were intercepted in transit is insufficient by itself to sustain a claim under the second clause. Rather, because the second clause requires a finding that the defendant "read[] or attempted to read" or "learned" the contents in transit, to state a viable claim, a plaintiff must plead that there was "some effort at understanding the substantive meaning of the communication" at the time of the interception. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025) (quoting *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024)); *Moss v. ResortPass, Inc*., 2025 WL 3452360, at *1 (Cal. Super. Oct. 30, 2025) (dismissing clause 2 claim based on the reasoning in *Doe v. Eating Recovery Ctr*). Mechanically-deployed data categorization that lacks any "intelligible understanding of" the underlying data does not constitute "reading" in the context of the second clause. *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. 2025); *see also Doe*, 2025 WL 2971090, at *5 ("A filtering process that simply sorts out certain data—which may be better analogized to sorting mail than to reading it—can't fairly be characterized as an effort at understanding the meaning of the communication.").

The allegations in the FAC do not meet this standard. Plaintiffs do not allege that DeepIntent read or attempted to read the contents of any communications in transit. At most, Plaintiffs describe automated processes used to store and or filter information. *See* FAC ¶49 (DeepIntent "automatically checks to determine if [a] user has a CDIUSER identifier stored in their browser,"); *id*. ("recognize[s] the user as one who has previously been to the website"); *id*. ("generate[s] a new CDIUSER identifier for the user"); and *id*. ¶68 ("aggregates intercepted user data across multiple sites and sessions to build a comprehensive behavior profile on the user").

Even if these allegations were true, and they are at best misleading, the mere processing and aggregating of data cannot be the basis for a claim under the second clause of Section 631(a).

#### 4. Plaintiffs Cannot Establish That DeepIntent Installed Pen Registers Under CIPA.

A pen register "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." CIPA § 638.50(b). Plaintiffs have not alleged a pen register claim for two reasons.

First, DeepIntent's purported "tracking tools" are not pen registers because as Plaintiffs admit, they are software that is utilized on the internet. FAC, ¶4. Section 638.51 was never meant to apply to internet software. Indeed, even though the section was enacted in 2015, when the California legislature would have been well-aware of the internet, there is not a single reference to the "internet" or "software" in the legislative history of Section 638.50 or its corollary Section 638.51. *See* **Exhibits A-G** (compiled legislative history).[2] Rather, the legislative history is replete with references to "telephones" (numbers, lines, and calls). *See, e.g.,* **Exhibit B**, at p. 1-2 ("One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a ***particular telephone line*** . . . and cannot be used to obtain real-time location data on a cellular telephone") (emphasis added). Further, when Section 638.51 was enacted, the California legislature contemporaneously enacted another provision requiring court orders authorizing the use of a pen register to include information associated with "***the telephone line*** to which the … device is to be attached." CIPA § 638.52(d)(1), (3) (emphasis added). Thus, there is no indication the legislature intended to expand the definition of a pen

[2] "[A]s a fundamental matter, courts may take judicial notice of legislative history." *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022).

register to allow private litigants to bring a suit based on internet communications (which inherently do not rely on a telephone line). As one Court recently held:

> Here, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites. Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing.
>
> ***Thus, the legislative history of the CIPA suggests that "pen register" … refer[s] to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites***.

*Sanchez v. Cars.com Inc*., 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (emphasis added) (dismissing claim under 638.51 claim ***with prejudice***); *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Ct. Sept. 9, 2024) ("The legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users").

Moreover, there are strong policy reasons for not extending the pen register provisions under Section 638.51 to the circumstances detailed in the FAC. Plaintiffs allege that DeepIntent's software "constitute 'pen registers' because they are 'devices' or 'processes' that 'record' 'addressing or signaling information'—***such as Plaintiffs' and California Subclass Members' IP addresses***—from the electronic communications transmitted by users' internet-connected devices." FAC ¶167 (emphasis added). IP addresses are the lifeblood of the internet; every time an individual visits a website, she voluntarily provides an IP address and the IP address is then used by the website to communicate with the individual and other websites. *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Ct. Mar. 13, 2024). For this reason, "[p]ublic policy strongly disputes [the] potential interpretation of privacy laws as one rendering every single

entity voluntarily visited by a potential plaintiff…as a violator." *Id.* (dismissing pen register claim under 638.51 based on the tracking of IP addresses). The plain language and legislative history of Section 638.51 make clear that it was never meant to apply to circumstances that involved the internet or the collection of IP addresses. The Court should decline to interpret the provision beyond its intended scope.

Second, even if the Court finds that Plaintiffs have Article III standing to bring their other claims (which, as detailed above, they do not), they clearly have no standing to bring their pen register claim. Recently, in *Gabrielli*, Judge Ramos addressed this issue in circumstances identical to those here. In that case, the plaintiff alleged that the defendant had "installed a third-party tracker…on his browser". *Gabrielli*, 2025 WL 2161288, at *1. The plaintiff alleged that the IP addresses were used to obtain "geographic information" which was then used "to target customers in specific geographic areas for more effective advertising and marketing." *Id.* Initially, the Court pointed out that unlike Section 631 of CIPA (which barred wiretapping under any circumstances), Section 638.51 only bans the placement of a pen register "without first obtaining a court order." *Id.*, at *8. The Court held that because the placement of a pen register is allowable (subject to following a legal procedure) any harm resulting from the placement of a pen register would necessarily be "procedural" and not substantive. *Id.* As such, no concrete injury can result from the placement of a pen register and the case needed to be dismissed. *Id.* This Court should dismiss Plaintiffs' pen register claim for the same reason.

Moreover, as noted above, unlike Plaintiffs' other claims, their pen register claim is based solely on obtaining and using non-content, record information such as "IP addresses, device type, browser information, operating systems, and timestamps." FAC ¶167. Courts have repeatedly held that parties have no expectation of privacy in their record information. *See Heeger*, 509 F.Supp.3d

at 1190 ("There is no legally protected privacy interest in IP addresses alone"); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (noting that computer users do not have a reasonable expectation of privacy in "to/from addresses of their messages or. . . IP addresses of. . . websites they visit"); *USA Today*, 2026 WL 932655, at *2 (recognizing that "it is well-established that there is no legally protected privacy interest in information such as device type and browser type"). For this reason, Plaintiffs cannot establish standing as a result of the placement of an alleged pen register *See id*.

**5. <u>Plaintiffs' Claims Under ECPA Should Be Dismissed Because the Websites Consented to DeepIntent's Use of Trackers.</u>**

Plaintiffs' claim under ECPA should be dismissed for several reasons. First, under ECPA, there is no unlawful interception where one of the parties to the communication has given prior consent to the alleged interception ***unless*** the plaintiff can establish tortious or criminal intent. 18 U.S.C. § 2511(2)(d). *See Caro v. Weintraub*, 618 F.3d 94, 100-101 (2d Cir. 2010) (dismissing claim because plaintiff failed to plead that the defendant "intend[ed] to commit a crime or tort independent of the act of recording itself"); *In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272, 1278-79 (C.D. Cal. 2001) (dismissing claim where plaintiff failed to sufficiently allege a criminal or tortious purpose); *Camm v. Reach Financial, LLC*, 2026 WL 861670, at *5 (S.D.N.Y. Mar. 30, 2026) (dismissing claim because the collection and disclosure of data was for a commercial, rather than a tortious or criminal, purpose).

Here, Plaintiffs admit that the websites with which they communicated consented to the alleged interceptions. *See* FAC ¶45 (noting that DeepIntent's tracking technologies "are integrated into health-related websites that have agreed to host such technologies"). Thus, absent the application of the crime/tort exception, Plaintiffs' ECPA claim must be dismissed in its entirety because it falls under ECPA's statutory consent exception. *In re DoubleClick Inc. Privacy*

*Litigation*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (Buchwald, J.) ("[C]ourts may dismiss a claim based on a statutory exception that appears on the face of the complaint," including ECPA's statutory consent exception).

Plaintiffs cannot satisfy the exception. As Judge Buchwald held in *DoubleClick*:

> the legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed ***narrowly***, covering only acts ***accompanied*** by a specific contemporary intention to commit a crime or tort.

154 F. Supp. 2d at 515 (describing legislative history and case law) (emphasis added). Courts "have consistently ruled that a plaintiff cannot establish that a defendant acted with a 'criminal or tortious' purpose simply by proving that the defendant committed any tort or crime." *Id*. at 516 (citing *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999)). Rather, the crime/tort exception only applies where the interception is utilized for the "purpose" of committing an independent crime or tort. In *Sussman*, the Ninth Circuit held that:

> [u]nder section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for interception its intended use was criminal or tortious...Where the purpose [of a taping] is not illegal or tortious, but the means are, the victims must seek redress elsewhere… ***Although ABC's taping may well have been a tortious invasion under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape***.

*Sussman*, 186 F.3d at 1202 (emphasis added); *Cooper v. Slice Technologies, Inc*., 2018 WL 2727888, at *4 (S.D.N.Y. June 6, 2018) (finding that the criminal or tortious act exception cannot be based on a violation of ECPA itself because that is a circular argument that ignores the statutory consent exception within ECPA); *U.S. v. DiFelice*, 837 F. Supp. 81, 82 (S.D.N.Y. 1983) (even "[a]ssuming that [defendant's] recordings violated [state] law, that fact by itself does not establish that he intercepted the conversations" for a criminal or tortious purpose); *Camm*, 2026 WL 861670, at *6 (crime/tort exception does not apply where plaintiffs did not "demonstrate[] that

[defendant]'s primary motivation was to commit . . . torts and statutory violations," as opposed to marketing activity).

Here, Plaintiffs argue that the crime-tort exception applies solely based on their CIPA, intrusion on seclusion, and invasion of privacy claims. FAC ¶189. But these claims do not establish an independent crime or tortious purpose; they merely rely on the alleged interceptions themselves. (FAC ¶¶43-49, 59-64). This is fatal to Plaintiffs' ECPA claim. *See Sussman*, 186 F.3d at 1202; *DeFelice*, 837 F. Supp. at 82; *Cooper*, 2018 WL 2727888, at *4.

**6. <u>Plaintiffs' Claims For Intrusion Upon Seclusion And Invasion Of Privacy Must Be Dismissed.</u>**

In Counts III and IV, Plaintiffs state causes of action for intrusion upon seclusion and violation of California's constitutional right to privacy. These causes of action have different but overlapping elements, and when both are brought in a single case, courts require a showing that: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Beltran*, 2025 WL 1635467, at *7. A cause of action for invasion of privacy must be sufficiently serious in nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. *Heeger*, 509 F. Supp. 3d at 1182, 1193.

Here, the allegations in the FAC do not satisfy these elements for the same reasons that Plaintiffs do not have standing. Under the first prong, courts do not recognize a reasonable expectation of privacy in browsing activity of public websites. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at*2 (S.D. Cal. 2024) ("[T]he internet is not a place where users have a reasonable expectation of privacy") (collecting cases). Similarly, under the second prong, the interception of public internet searches does not constitute conduct that is highly offensive, unless the search itself discloses PHI about the user. *Nienaber*, 733 F. Supp. at 1084 (generic searches for cancer not tied to an individual are not actionable because they reveal nothing about the user's

healthcare); *Wright*, 2025 WL 3248749, at *4 (dismissing invasion of privacy claim where complaint did not allege what the plaintiff's "visits revealed about ***her*** healthcare information") (emphasis added). *Harrill*, 2025 WL 1635428, at *4 (searches on internet about medical conditions or procedures not actionable unless they are specifically tied to an individual because they do not constitute PHI and "[a]n internet user might research medical information for reasons unrelated to the user's own health conditions."); *Cousin*, 681 F. Supp. 3d at 1126-27 (finding no privacy claim where plaintiff allegedly made generic medical searches on the internet that were not tied to him as an individual).

Here, Plaintiffs' privacy claims are based entirely on their generic internet searches about medical procedures or medical conditions. They do not allege anything in the searches made clear that they had a specific medical condition or needed a particular procedure. Thus, no PHI or sensitive information was disclosed, and Plaintiffs' intrusion upon seclusion and invasion of privacy claims should be dismissed.

#### 7. Plaintiffs' Claim Under California's Unfair Competition Law ("UCL") Must Be Dismissed.

The UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because the UCL is written in the disjunctive, it establishes three types of unfair competition: unlawful, unfair, or fraudulent business practices. *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647 (1996). Here, no fraud was alleged. Therefore, Plaintiffs are relying on DeepIntent's alleged business practices being either unlawful or unfair to support their cause of action.

In 2004, California voters approved Proposition 64, which amended the UCL to provide that a private person only has standing to bring a UCL action if that person "suffered injury in fact

***and*** has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1359 (2010) (emphasis added). Under these narrower requirements, the California Supreme Court has explained that "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011) (emphasis in original).

Here, Plaintiffs allege that DeepIntent's conduct "harmed competition" because "its competitors spent the time and money necessary to lawfully collect information" and "caused Plaintiffs and the California Subclass Members to suffer economic injury." FAC ¶¶234-35. But Plaintiffs do not explain how DeepIntent's conduct harmed competition, which competitors were harmed (or how they lawfully collected information) or how Plaintiffs suffered economic injury as a result of the conduct. More fundamentally, Plaintiffs do not allege that they are DeepIntent's competitors, and so they could not establish harm even if other businesses incurred costs that DeepIntent did not incur. Plaintiffs' conclusory and vague allegations cannot be the basis for a claim. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss"); *Archer v. United Rentals, Inc.*, 195 Cal.App.4th 807, 816 (2011) (rejecting claim that recording PII was a violation of the UCL because "plaintiffs have failed to demonstrate how such privacy violation translates into a loss of money or property. . . the absence of [which] is fatal to plaintiffs' UCL class claim for injunctive relief"); *Manier et al. v. Triple Lift Inc. et al.*, 2026 WL 1295546, at *7 (C.D. Cal. Apr. 15, 2026) (dismissing UCL claim because "the mere misappropriation of personal information does not establish compensable damages[,]" and that

information holds no economic value to plaintiff) (quoting *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)).

### 8. <u>Plaintiffs' Declaratory Judgment Claim Should Be Dismissed.</u>

Plaintiffs' claim for declaratory relief related to DeepIntent's alleged tracking activity should be dismissed for the same reasons that render Plaintiffs' other causes of action deficient. Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such a declaration" in "a case of actual controversy." 28 U.S.C. § 2201(a). This "request for a remedy . . . does not exist independent of a plausible underlying claim for relief." *Performing Arts Ctr. v. Actor's Equity Ass'n*, 2022 WL 16755284, at *16 (E.D.N.Y. Aug. 25, 2022). Accordingly, where the underlying claims have been dismissed, the declaratory judgment cause of action must be dismissed as well. *VW Credit Leasing LTD v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 290 (E.D.N.Y. 2024). For the reasons expressed above, Plaintiffs' claims are deficient and should be dismissed, and their declaratory judgment claim thus must be dismissed as well.

### 9. <u>Claims By Mr. Harris Should Be Dismissed.</u>

In addition to the reasons set forth above with respect to all Plaintiffs, the CIPA clause 2, ECPA, intrusion upon seclusion, and invasion of privacy claims advanced by Mr. Harris should be dismissed for the following reasons. A CIPA clause 2 claim requires a plaintiff to plead that "contents" of communications have been intercepted in transit. CIPA, § 631(a). ECPA has the same requirement. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014). Here, the only contents that Mr. Harris claims have been intercepted were his searches on a website. But, the FAC only alleges that Mr. Harris searched "medical conditions" on Ozempic.com. FAC ¶¶8, 108-112. These allegations are insufficient as a matter of law. *Harrill*, 2025 WL 1635428, at *4 (dismissing CIPA clause 2 claim for failure to specify which searches

were made); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) ("As a matter of due process, these allegations do not provide adequate notice as to what Defendant did to harm these Plaintiffs. Without allegations as to what these Plaintiffs searched, Plaintiffs fail to plausibly allege that Defendant intercepted the contents of their communications."). Therefore, Mr. Harris's claims arising under CIPA clause 2 and ECPA should be dismissed.

Similarly, Mr. Harris's invasion of privacy and intrusion upon seclusion claims are based on allegations that his internet searches were intercepted and used by DeepIntent, but Mr. Harris does not in any way describe the substance of those searches. These allegations are insufficient to state a claim as a matter of law. *See Beltran*, 2025 WL 1635467, at *7–8 (dismissing invasion of privacy claim where Plaintiffs "do not specifically allege that their searches related to the provision of healthcare, patient status, or otherwise included PHI" and finding that "to sufficiently state their invasion of privacy claim, Plaintiffs must describe the types or categories of sensitive health information that they provided to Defendants through the website") (internal quotations omitted); *see also B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (dismissing privacy claims where plaintiffs "fail[ed] to allege what, if any, medical information or medical records were transmitted or disclosed" when they used defendant's website, such that the court could "only interpret that [p]laintiffs used [d]efendant's [w]ebsite for routine medical searches and inquiries").

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6).

Date: May 18, 2026 By: /s/ Michael D. Silberfarb
Michael D. Silberfarb
Philip N. Yannella (*pro hac vice*)

**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Michael.Silberfarb@blankrome.com
Philip.Yannella@blankrome.com

**CERTIFICATE OF COMPLIANCE**

I, Michael D. Silberfarb, hereby certify, pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss is 8,745 words in length.

Date: May 18, 2026 By: */s/ Michael D. Silberfarb*
Michael D. Silberfarb

**CERTIFICATE OF SERVICE**

I, Michael D. Silberfarb, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss was served on all counsel of record via the Court's CM/ECF filing system on this 18th day of May 2026.

By: */s/ Michael D. Silberfarb*
Michael D. Silberfarb