**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NINA HARRIS and GERALD HARRIS, individually and on behalf of those similarly situated,<br><br>*Plaintiffs,*<br>v.<br><br>DEEPINTENT TECHNOLOGIES, INC.,<br><br>*Defendant.* | Civil Action No. 1:25-cv-08949 |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: July 24, 2026

Michael D. Silberfarb
Philip N. Yannella (*pro hac vice*)
**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Michael.Silberfarb@blankrome.com
Philip.Yannella@blankrome.com

*Counsel for Defendant*
*DeepIntent Technologies, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Lack Standing. ..... 1

1. There Is No Privacy Harm. ..... 2

2. There Is No Lost Value Harm. ..... 7

B. Plaintiffs Do Not Allege A Claim Under CIPA §631(a). ..... 7

C. Plaintiffs Do Not Allege A Pen Register Claim. ..... 8

D. Plaintiffs Fail to State a Claim Under ECPA. ..... 9

E. The Remaining Claims Should Be Dismissed. ..... 11

F. The Claims Against Mr. Harris Should Be Dismissed. ..... 11

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquino-Roraldo v. Med. Management Intl*,
2026 WL 1092905 (D. Ore. 2026) ....................4, 5

*Brown v. Google*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ....................6

*C.M. v. MarinHealth Med. Grp.*,
2024 WL 217841 (N.D. Cal. 2024) ....................3

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ....................3

*Crano v. Sojern*,
2026 WL 1670136 (N.D. Cal. 2026) ....................4, 6

*D'Antonio v. Cable News Network*,
2026 WL 960032 (S.D.N.Y. Apr. 9, 2026) ....................5, 9

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................10, 11

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ....................2

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. 2025) ....................8, 9

*Gaige v. Exer Holding Co.*,
2025 WL 559719 (C.D. Cal. 2025) ....................3

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................6

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D.Cal. 2022) ....................7

*Joiner v. NHL Enterprises*,
2025 WL 2846431 (S.D.N.Y. 2025) ....................11

*Katz-Lacabe v. Oracle America*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................6

*Kzryzek v. OpenX Technologies*,
817 F. Supp. 3d 857 (N.D. Cal. 2023) ....................................................................6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)...................................................................................................3

*Maghoney v. Dotdash Meredith, Inc*.,
2026 WL 497402 (S.D. Cal. 2026) ..........................................................................5

*Mount v. PulsePoint, Inc*.,
684 F. App'x 32 (2d Cir. 2017) ..............................................................................3

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
2024 WL 3914663 (C.D. Cal. 2024)........................................................................7

*Popa v. Microsoft Corp*.,
153 F.4th 784 (9th Cir. 2025) ..............................................................................2, 4

*R.C. v. Sussex Publishers*, *LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)...........................................................8

*Riganian v. LiveRamp Holdings*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..........................................................5, 6, 11

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ..............................................................................6, 7

*Shah v. Talentbridge, Inc*.,
2026 WL 1507888 (C.D. Cal. May 18, 2026) ..........................................................3

*Watson v. Franciscan Alliance, Inc*.,
2026 WL 1694563 (N.D. Ill. June 11, 2026)............................................................3

**Statutes**

California Invasion of Privacy Act, Cal. Penal Code § 631(a).....................................................7

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* ..........................9, 10

DeepIntent[1] files this Reply in Support of its Motion to Dismiss the FAC.

## I. INTRODUCTION

Plaintiffs seek to analogize this case to circumstances where individuals' sensitive data was linked with personally identifying information and sold to third parties, or where social media companies created "cradle-to-grave" identifiable user profiles which included everything from political views to sexual orientation. This case is nothing like those cases.

The FAC does not allege that DeepIntent collected or used any of Plaintiffs' sensitive information. It does not allege that DeepIntent ever possessed or sold Plaintiffs' PII or PHI. And, it does not allege that *DeepIntent* sent Plaintiffs targeted advertisements (only that someone did). Read in the light most favorable to Plaintiffs, the FAC alleges that DeepIntent created anonymous profiles with non-sensitive data collected from public internet searches. These allegations do not come close to establishing an injury sufficient to confer Article III standing.

Plaintiffs' arguments on their substantive claims fare no better. To avoid dismissal, the Opposition asks the Court to apply a lower pleading standard, ignore applicable authority and infer facts that are pled nowhere in – and often contradict – the FAC.

The Court should decline to extend such courtesies and this case should be dismissed ***with prejudice***.

## II. ARGUMENT

### A. Plaintiffs Lack Standing.

Plaintiffs argue they satisfy Article III's standing requirement based on privacy harms (intrusion upon seclusion and disclosure of private information) and harm resulting from lost value. Both theories should be rejected.

---

[1] Capitalized terms used herein but not defined are ascribed the meaning given to them in the Motion.

**1. <u>There Is No Privacy Harm</u>.**

***Intrusion Upon Seclusion***

Plaintiffs rely heavily on *In re Facebook, Inc. Internet Tracking Litig*. 956 F.3d 589 (9th Cir. 2020) for the proposition that their alleged harm is analogous to the tort of intrusion upon seclusion. However, the holding in *Facebook* was far narrower than Plaintiffs acknowledge. In *Facebook*, the plaintiffs alleged that the defendant intercepted internet queries with information from individual Facebook profiles to create profiles of "an individual's likes, dislikes, interests, and habits over a significant amount of time." 956 F.3d at 599. Crucial to the court's decision was the plaintiffs' allegation that "by correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without users' consent." *Id*.

After thousands of new case filings and several years of inconsistent lower court rulings, the Ninth Circuit clarified that, "[d]espite the broad statements made [in *Facebook*]," courts making standing determinations must account for the "individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Popa v. Microsoft Corp*., 153 F.4th 784, 791-794 (9th Cir. 2025). It explained that "[t]o show intrusion upon seclusion, a plaintiff must show an intentional interference with his interest in solitude…of a kind that would be highly offensive to a reasonable man." *Id*. Thus, there is no intrusion upon seclusion unless "*embarrassing, invasive, or otherwise private information [is] collected*." *Id*. (emphasis in original).

While Plaintiffs baldly assert that DeepIntent "intercepts massive amounts of sensitive" healthcare information, the only information that Plaintiffs actually allege was intercepted were internet searches about medical terms. But, both before and after *Popa*, courts have uniformly held that the interception of such searches is not "highly offensive" unless the searches were made in

connection with the provision of medical care (e.g., in a patient portal), which Plaintiffs do not allege. Motion, at 12-13; *Watson v. Franciscan Alliance, Inc*., 2026 WL 1694563, at *5 (N.D. Ill. June 11, 2026) (interception of searches for medical specialist does not reveal medical condition); *cf Shah v. Talentbridge, Inc*., 2026 WL 1507888, at *3 (C.D. Cal. May 18, 2026) (interception of searches for "felony-friendly job opportunities or jobs with no background checks" not highly offensive).[2] Plaintiffs offer no contrary authority.

Plaintiffs' allegation that they received targeted ads about their alleged medical conditions after making searches does not change the analysis. The cases Plaintiffs cite for this proposition held only that standing existed because the ads were based on patients' intercepted private communications with medical providers. *C.M. v. MarinHealth Med. Grp.*, 2024 WL 217841, at *2 (N.D. Cal. 2024) (interception of patient's PHI and PII); *Gaige v. Exer Holding Co.*, 2025 WL 559719, at *1 (C.D. Cal. 2025) (hospital system allowed "third parties to intercept the contents of patient communications[ and] view patients' private information"). Further, even if allegations of targeted ads were enough, the harm alleged here is insufficient because the ads are not traceable to DeepIntent. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In the cases cited by Plaintiffs, there was traceability because the plaintiff received an ad after making a search on the defendant's website. Here, Plaintiffs allege to have received ads after searching non-party websites. But, there is no traceability because DeepIntent is one of many companies that could

[2] *Cousin II*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) held only that the amended complaint "narrowly survived" dismissal because the plaintiffs alleged that their internet searches were made in the context of receiving medical care. And, contrary to Plaintiff's description, the court in *Mount v. PulsePoint*, *Inc*., an unreported decision, did not find the plaintiff was harmed solely because internet searches were intercepted; rather, it found harm because defendant programmed its cookies to circumvent default cookie blockers in the plaintiff's browser. 684 F. App'x 32 (2d Cir. 2017).

have bid on and won the right to place those ads. FAC ¶33(c) (typically "dozens" of companies bid to place any particular ad, with only one winner). Plaintiffs do not allege, nor could they, that the ads came from DeepIntent.

Plaintiffs assert that it is irrelevant whether DeepIntent intercepted sensitive information because the FAC alleges that DeepIntent is "a third-party intermediary that surreptitiously compiled and monetized cross-site health-specific profiles of users (including Plaintiffs) who never knowingly interacted with DeepIntent at all." This is wrong.

Since *Popa*, courts have consistently held that creating profiles based on the interception of content across multiple websites (the exact allegation here) is insufficient to establish standing absent an allegation that sensitive information was collected. *Crano v. Sojern*, 2026 WL 1670136, at *1-4 (N.D. Cal. 2026) (no standing even though marketing company tracked "data directly from users' communications with hotels[' websites] and other travel businesses" and used this data "to create rich, deep profiles on individual travelers," which included "those individuals' intended purchases…where they will be and when" as well as "the relevant hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her Reservations" because there was no collection of "embarrassing, invasive, or otherwise private information"); *Aquino-Roraldo v. Med. Management Intl*, 2026 WL 1092905, at *6 (D. Ore. 2026) (no standing where defendant intercepted searches across multiple websites and created detailed user profiles about individuals' pets for marketing purposes); *Torres v. Seatgeek, Inc.*, 2026 WL 1495202, at *3-5 (N.D. Cal. 2026). And, as noted above, the only information

Plaintiffs allege was collected from them were internet searches about medical conditions, which are non-sensitive. *Maghoney v. Dotdash Meredith, Inc*., 2026 WL 497402 (S.D. Cal. 2026).[3]

Plaintiffs' fallback contention is that, even if no sensitive data was captured, they still have standing because their data was de-anonymized. But this argument fails too. First, de-anonymization alone is not enough; Plaintiffs must still allege that sensitive data was also intercepted. *Aquino-Roraldo*, 2026 WL 1092905 at *6 (defendant's linking of non-sensitive user-profiles to non-anonymous FacebookID does not constitute concrete harm).

Second, while Plaintiffs assert that their "core theory" is that their profiles were in fact "de-anonymized," they do not allege that their PII was obtained or disclosed by DeepIntent. Rather, the FAC only states that DeepIntent hypothetically "could" or "can" de-anonymize individuals (not that it ever has). FAC ¶¶41, 117-19.

Plaintiffs assert that the court nonetheless should assume Plaintiffs were identified because DeepIntent allegedly utilized cookie syncing and persistent identifiers to follow the same user's activity across multiple websites. But, the FAC does not say that this resulted in the disclosure of any PII, which is in direct contrast to *D'Antonio v. Cable News Network*, the case Plaintiffs cite for this proposition. 2026 WL 960032, at *4 (S.D.N.Y. Apr. 9, 2026). *D'Antonio's* holding turned on the fact that the "sensitive" data at issue was sold to third parties, which linked it to "comprehensive, ***non-anonymous*** profiles." *Id*. (emphasis added). Plaintiffs' reliance on *Riganian v. LiveRamp Holdings* for the proposition that the use of "pseudonymization" (alphanumeric information in place of identifying information) is sufficient to establish standing also fails. Unlike

[3] Plaintiffs purport to distinguish *Maghoney* by asserting that their data was de-anonymized (which it was not), but they do not address *Maghoney*'s holding that the interception of searches for medical content are not considered privacy violations unless they are made in the context of the provision of treatment.

here, that case involved the disclosure of the plaintiff's "name, physical address, or email address." 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025); *contra Crano*, 2026 WL 1670136, at *1-4 (use of alphanumeric codes and persistent identifiers does not constitute disclosure of PII).

Tellingly, unlike here, each case cited by Plaintiffs in support of their tracking/data profiling theory involved the disclosure of Plaintiffs' PII. *Kzryzek v. OpenX Technologies*, 817 F. Supp. 3d 857, 863-64 (N.D. Cal. 2023) ("sensitive information" which was linked to defendants' de-anonymized profiles); *Katz-Lacabe v. Oracle America*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (Plaintiff received mail from defendant indicating his PII was disclosed and connected with "sensitive" information); *Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (profiles were connected to plaintiffs' "email address and other personal identifiers").

For these reasons, Plaintiffs cannot establish a privacy injury analogous to an intrusion upon seclusion claim.

***Disclosure Of Private Information***

Nor can Plaintiffs do so under a "disclosure of private information" theory. Plaintiffs rely on *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), where the court found that plaintiff had standing because the defendant made his sensitive personal information and identity available to Facebook.[4] Here, as detailed above, the FAC contains no allegation that DeepIntent collected any of Plaintiffs' sensitive personal information or had access to Plaintiffs' identifying

[4] In support of this theory, Plaintiffs also cite *Brown v. Google*, but *Brown* did not involve sharing private information. 685 F.Supp.3d 909 (N.D. Cal. 2023). Rather, *Brown*'s holding was based on a defendants' alleged interception of information even though plaintiff set his phone to "incognito mode."

information. Moreover, unlike in *Salazar*, the FAC does not allege that DeepIntent shared or sold any such information to a third-party.[5]

### 2. **<u>There Is No Lost Value Harm</u>.**

Plaintiffs also argue that they have standing because DeepIntent diminished the value of their personal health data. As Plaintiffs admit, however, to survive dismissal on this theory, the FAC would need to allege, at a minimum, that the data had independent value and that defendant's actions reduced the value of the data, or that plaintiff's ability to participate in the market for the data was impaired. Opp. 10-11 (*citing Greenstein v. Noblr Reciprocal Exch*., 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (no standing where Plaintiffs did not show how disclosure caused their data "to be less valuable than before," and did not "prevent Plaintiffs from selling such information in the future"); and *Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663, at * 6 (C.D. Cal. 2024) (no standing where Plaintiffs offered "no allegation that Plaintiffs would somehow attain a financial benefit from their PII on such a market")). The paragraphs of the FAC cited by Plaintiffs do not meet these elements. Rather, Plaintiffs allege only that their data, once aggregated with other data, creates a valuable market. They do not allege that their data had independent value, that the value of the data was diminished by DeepIntent's actions, or that Plaintiffs were prevented from participating in the market for their data.

## B. **<u>Plaintiffs Do Not Allege A Claim Under CIPA §631(a)</u>.**

To sustain a claim under the second clause of CIPA §631(a), Plaintiffs must allege that DeepIntent "read, learned or attempted to learn" the contents of their communications while such

[5] While the FAC alleges that DeepIntent shared certain anonymized "identifiers" with third parties, it does not identify any instance in which Plaintiffs' sensitive or identifying information was shared. Likewise, while the FAC alleges DeepIntent sells access "to audiences," it makes clear that this was in the context of real time bidding, where DeepIntent offers to target certain individuals who might have certain characteristics (*e.g.*, cancer patients over 50). The FAC does not say that DeepIntent directly sells information about Plaintiffs or other individuals.

contents were "in transit." The FAC does not include any such allegation. While paragraph 55 of the FAC alleges that DeepIntent intercepts communications "in transit," it says nothing about learning or reading the contents of those communications.[6] Paragraph 158 has the inverse problem. It alleges DeepIntent attempted to read the contents of Plaintiffs' communications but does not say it did so in transit.

Plaintiffs ask the Court to apply a "lower pleading standard" and to infer from generalized allegations about DeepIntent's business model that the interceptions must have taken place in real time. But, none of those allegations indicate why the Court should make such an inference. This was precisely the point in *R.C. v. Sussex Publishers*, *LLC*, the lead case Plaintiffs rely upon, which dismissed the plaintiff's initial complaint because it failed to plead that the defendant read or learned the contents of communications in transit. 2025 WL 948060 (N.D. Cal. Mar. 28, 2025). The case was allowed to proceed only after the plaintiff added a specific allegation.

**C. <u>Plaintiffs Do Not Allege A Pen Register Claim</u>.**

As detailed in the Motion, several California state courts have dismissed pen register claims brought under CIPA because the pen register statute was never intended to apply to internet technologies. Plaintiffs cite federal court decisions that have come to the opposite conclusion. DeepIntent urges the Court to follow the conclusion and reasoning of the state courts because, as detailed in the Motion, those cases are supported by the plain language and legislative history of the 1960s-era statute, which was intended to apply to telephonic technologies, not the internet.

Even if the Court does not follow those decisions, it should follow the well-reasoned opinion in *Gabrielli*. *Gabrielli* held that a plaintiff lacked standing to bring a pen register claim where he alleged that his IP address and other record information was tracked. It reasoned that

[6] Moreover, paragraph 55 addresses what happens on EverydayHealth.com, a website that Plaintiffs do not even claim to have visited.

unlike in tracking cases where standing was found, the plaintiff did not suffer a privacy harm because neither his content nor his identity was disclosed. *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4-7 (S.D.N.Y. 2025).

Plaintiffs argue that their allegations are much "broader" than those in *Gabrielli*, and assert that the pen registers in *Gabrielli* collected IP addresses, while the pen registers here collected "persistent identifiers" that were utilized to synchronize individuals across websites. But this distinction is irrelevant because *Gabrielli* turned on the fact that the plaintiff's identity was not disclosed and no content was collected. *Id*. Likewise, here, the FAC does not allege that DeepIntent de-anonymized Plaintiffs. And, because pen registers, by statutory definition do not intercept content, Plaintiffs cannot – and do not – assert that any content was collected. Notably, the record information collected through the pen registers in both *Gabrielli* and here was utilized for the same purpose: targeted advertising. Thus, this case is on all fours with *Gabrielli*, and Plaintiffs' pen register claim should be dismissed.[7]

### D. <u>Plaintiffs Fail To State A Claim Under ECPA</u>.

In its Motion, DeepIntent explained that there is no unlawful interception under ECPA when one of the parties to a communication has consented to the interception. In response, Plaintiffs argue that this exception does not apply because DeepIntent was not a party to the communications at issue. But DeepIntent's participation is irrelevant because the websites that communicated with Plaintiffs—which ***were*** parties to the communications—consented to the alleged interceptions.

---

[7] As noted above, the *D'Antonio* case cited by Plaintiffs is distinguishable because the plaintiffs alleged that the defendant disclosed their identities. *D'Antonio*, 2026 WL 960032, at *4. In any event, immediately subsequent to the decision cited by Plaintiffs, Judge Marrero stayed the case, pending a ruling on standing from an appellate court in California. 2026 WL 1815527 (S.D.N.Y. 2026).

Plaintiffs then argue that the FAC does not allege that those websites "knowingly consented" to the manner in which DeepIntent received and used the data. But, the FAC expressly alleges that "DeepIntent's. . . web-based tracking technologies. . . are integrated into health-related websites that have agreed to host such technologies". FAC ¶45; *see also* ¶124 (the websites "have installed" DeepIntent's cookies, pixels, etc.). The FAC does ***not*** allege that the websites were ignorant about what these technologies did.

Moreover, *DoubleClick* cautioned against allowing a case to proceed based on a "theoretical possibility" that website operators did not understand the technologies they agreed to install. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001) ("Plaintiffs have offered no explanation as to how, in anything other than a purely theoretical sense, the [websites] could have played such a central role in the information collection and not have authorized. . . access. This purely theoretical possibility that a [website] might have been so ignorant as to have been unaware of the defining characteristic of [defendant's] advertising service. . . and its own role in facilitating that service, is too remote to be the basis for extensive and costly discovery"). *DoubleClick* further held that the websites do not need to understand "precisely how [defendant] collects demographic information through cookies" because "[a]ll that the [websites] must authorize is that [defendant] access plaintiffs' communications to them". *Id.*

Plaintiffs point to cases describing the burden of proof in ECPA cases when the parties contest whether a website consented. But DeepIntent does not need to "prove" the websites consented here when Plaintiffs' own FAC alleges that those websites affirmatively agreed to install DeepIntent's software. *Id.* (plaintiff "cannot survive a motion to dismiss….based solely on the naked allegation that defendant's access was 'unauthorized'" and must instead "allege[] and proffer[] sufficient proofs to create a colorable claim that such access was unauthorized",

especially because "every fact they do allege supports the inference that the [websites] did authorize. . . access").

Plaintiffs also fail to establish that DeepIntent's conduct falls into the ECPA's "crime/tort" exception, which applies only when, unlike here, the communication was intercepted "for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Joiner v. NHL Enterprises*, 2025 WL 2846431, at *8-9 (S.D.N.Y. 2025). Likewise, contrary to Plaintiffs' position, a profit motive does not make lawful conduct tortious. *Id*; *DoubleClick*, 154 F. Supp. 2d at 519.[8]

**E. <u>The Remaining Claims Should Be Dismissed</u>.**

Plaintiffs' intrusion upon seclusion and invasion of privacy claims should be dismissed because they are subject to the same standard as Article III standing, which, as detailed above and in the Motion, has not been met. Moreover, Plaintiffs' UCL claim should be dismissed because (a) the claim under the "unlawful" prong is entirely dependent on the success of their CIPA claims (which should be dismissed); and (b) the claim under the "fairness" prong fails because Plaintiffs have not alleged that they suffered individualized harm. Plaintiffs' Declaratory Judgment claim should be dismissed because it is also dependent on Plaintiffs' other causes of action.

**F. <u>The Claims Against Mr. Harris Should Be Dismissed</u>.**

Nothing that Plaintiffs raise in the Opposition cures the fact that the FAC does not allege which of Mr. Harris's search terms were allegedly intercepted, which courts have repeatedly found is fatal in a case such as this (both on substantive and standing grounds). The fact that Mr. Harris visited Ozempic.com does not reveal that he had any specific condition or even that he was

[8] The Court should also give no weight to Plaintiffs' citation to out of District cases, which expressly "disagreed" with *DoubleClick*, the leading precedent in this District. *Riganian*, 791 F. Supp. at 1090.

considering using Ozempic. And, as the FAC alleges, Ozempic has multiple uses. FAC ¶107. The FAC's assertions about DeepIntent's aggregation of data and creation of profiles do not fix this problem, because they are based on alleged "profiles" that were created utilizing information that is not specified in the FAC, and because they are unsupported by Plaintiffs' citations to the FAC (*e.g.*, paragraphs 75 and 76 do not allege that CDIUSER was used to create a profile about *Mr. Harris*, and paragraph 62 does not allege that DeepIntent resolved a zip code to *his* address).

## III. CONCLUSION

Defendant requests that this Court grant its Motion.

Date: July 24, 2026

By: */s/ Michael D. Silberfarb*

Michael D. Silberfarb
Philip N. Yannella (*pro hac vice*)
**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Michael.Silberfarb@blankrome.com
Philip.Yannella@blankrome.com

## **CERTIFICATE OF COMPLIANCE**

I, Michael D. Silberfarb, hereby certify, pursuant to Local Rule 7.1(c), that the foregoing Reply Brief in Support of Defendant's Motion to Dismiss is 3,500 words in length.

Date: July 24, 2026 By: */s/ Michael D. Silberfarb*
Michael D. Silberfarb

**CERTIFICATE OF SERVICE**

I, Michael D. Silberfarb, hereby certify that a true and correct copy of the foregoing Reply Brief in Support of Defendant's Motion to Dismiss was served on all counsel of record via the Court's CM/ECF filing system on this July 24, 2026.

By: */s/ Michael D. Silberfarb*
Michael D. Silberfarb